2025-1289

# United States Court of Appeals
# for the Federal Circuit

EPIC SYSTEMS CORP.,

Plaintiff-Appellee,

v.

DECAPOLIS SYSTEMS, LLC,

Defendant-Appellant,

*Appeal from the United States District Court for the*
*Southern District of Florida in case no.:*
*9:22-cv-80173-DMM*
*Judge Donald M. Middlebrooks*

## OPENING BRIEF
## OF DEFENDANT-APPELLANT

February 14, 2025

*/s/ Randall Garteiser*

Randall Garteiser
rgarteiser@ghiplaw.com
(415) 568-0553
Christopher A. Honea
chonea@ghiplaw.com
(918) 510-5375
M. Scott Fuller
sfuller@ghiplaw.com
(214) 729-6548
**GARTEISER HONEA PLLC**
119 West Ferguson Street
Tyler, Texas 75702
Main Telephone: (415) 568-0553

*Attorneys for Defendant-Appellant*
DECAPOLIS SYSTEMS LLC

## <u>PATENT CLAIMS AT ISSUE</u>

### <u>United States Patent No. 7,464,040</u>

ASSERTED CLAIMS: 1 and 46

<u>'040 CLAIM 1:</u>

An apparatus, comprising:

a receiver, wherein the receiver receives information regarding an individual, wherein the information regarding an individual is transmitted from a first computer or from a first communication device, wherein the first computer or the first communication device is associated with a healthcare provider, wherein the information regarding an individual is transmitted via, on, or over, at least one of the Internet and the World Wide Web, wherein the information regarding an individual contains information regarding at least one of a symptom, an examination finding, a diagnosis, a treatment, an administration of a treatment, and a procedure;

a database or a memory device, wherein the database or the memory device is associated with the receiver and is located at a location remote from the first computer or remote from the first communication device, wherein the database or the memory device stores information regarding a plurality of individuals, a plurality of healthcare providers, and a plurality of healthcare insurers or healthcare payers, and further wherein the information regarding a plurality of individuals, a plurality of healthcare providers, and a plurality of healthcare insurers or healthcare payers, includes a healthcare record or a healthcare history of, for, or associated with, each individual of a plurality of individuals, including a healthcare record or a healthcare history of, for, or associated with, the individual, information regarding a healthcare practice of, and an insurance accepted by, each of the plurality of healthcare providers, including information regarding a healthcare practice of, and an insurance accepted by, the healthcare provider, information for processing or for storing information regarding a healthcare diagnosis or a healthcare treatment, and information for submitting an insurance claim to a healthcare insurer or a healthcare payer associated with the individual; and

a processing device, wherein the processing device processes the information regarding an individual, and further wherein the processing device processes information for at least one of storing the information regarding an individual in the database or the memory device and updating the healthcare record or the healthcare history of, for, or associated with, the individual, and further wherein the processing

device automatically generates an insurance claim in response to the storing of the information regarding an individual in the database or the memory device or the updating of the healthcare record or the healthcare history of, for, or associated with, the individual, wherein the insurance claim is suitable for being automatically submitted to the healthcare insurer or the healthcare payer associated with the individual or is suitable for being automatically transmitted to a second computer or to a second communication device, wherein the second computer or the second communication device is associated with the healthcare insurer or the healthcare payer associated with the individual, and further wherein the processing device transmits the insurance claim to the second computer or to the second communication device.

'040 CLAIM 46:

A computer-implemented method, comprising:

storing information regarding a plurality of individuals, a plurality of healthcare providers, and a plurality of healthcare insurers or healthcare payers, in a database or a memory device, wherein the information regarding a plurality of individuals, a plurality of healthcare providers, and a plurality of healthcare insurers or healthcare payers, includes a healthcare record or a healthcare history of, for, or associated with, each individual of the plurality of individuals, including a healthcare record or a healthcare history of, for, or associated with, an individual, information regarding a healthcare practice of, and an insurance accepted by, each of the plurality of healthcare providers, including information regarding a healthcare practice of, and an insurance accepted by, a healthcare provider, information for processing or for storing information regarding a healthcare diagnosis or a healthcare treatment, and information for submitting an insurance claim to a healthcare insurer or a healthcare payer associated with the individual;

receiving information regarding the individual with a receiver, wherein the information regarding the individual is transmitted from a first computer or from a first communication device, wherein the first computer or the first communication device is associated with or is used by the healthcare provider, and further wherein the receiver is associated with the database or the memory device and is located at a location remote from the first computer or remote from the first communication device, and further wherein the information regarding the individual contains information regarding at least one of a symptom, an examination finding, a diagnosis, a treatment, an administration of a treatment, and a procedure;

at least one of storing the information regarding the individual in the database or the memory device and updating the healthcare record or the healthcare history of, for, or associated with, the individual;

generating an insurance claim, wherein the insurance claim is automatically generated by a processing device in response to the storing of the information regarding the individual in the database or the memory device or the updating of the healthcare record or the healthcare history of, for, or associated with, the individual, wherein the insurance claim is suitable for being automatically submitted to the healthcare insurer or the healthcare payer associated with the individual or is suitable for being automatically transmitted to a second computer or to a second communication device, wherein the second computer or the second communication

device is associated with the healthcare insurer or the healthcare payer associated with the individual; and

transmitting the insurance claim to the second computer or to the second communication device.

## United States Patent No. 7,490,048

ASSERTED CLAIMS: 1, 2, 10, 20, and 22-40

<u>'048 CLAIM 1:</u>

An apparatus, comprising:

a processor, wherein the processor processes a request to at least one of access, obtain, change, alter, and modify, information contained in a patient's healthcare record or a patient's healthcare file of a patient, wherein the processor determines whether an individual or entity is authorized to at least one of access, obtain, change, alter, and modify, the information contained in a patient's healthcare record or a patient's healthcare file, and further wherein the processor generates a notification report containing at least one of information regarding the individual or entity making the request, identification information regarding the individual or entity, and a time and date of the request, and further wherein the notification_report contains an actual change, alteration, or modification, sought to be made or made to the information contained in a patient's healthcare record or a patient's healthcare file; and

a transmitter, wherein the transmitter transmits the notification report to a patient communication device of the patient via, on, or over, a communication network, and further wherein the notification report is transmitted to the patient communication device at least one of during, concurrently with, at a same time as, and prior to a completion of, at least one of an accessing, an obtaining, a changing, an altering, and a modifying, of the information contained in a patient's healthcare record or a patient's healthcare file by the individual or entity, or at least one of during, concurrently with, at a same time as, and prior to a completion of, a processing of the request.

'048 CLAIM 2:

A computer-implemented method, comprising:

processing, with a processor, a request by a person or an entity to at least one of access, obtain, change, alter, and modify, information contained in an individual's or patient's healthcare record or an individual's or patient's healthcare file of the individual or patient wherein the individual's or patient's healthcare record or the individual's or patient's healthcare file of the individual or patient contains healthcare information or healthcare-related information personal to the individual or patient; generating a message containing at least one of information regarding the person or the entity making the request and identification information regarding the person or the entity making the request, and further wherein the message contains an actual change, alteration, or modification, sought to be made or made to the information contained in an individual's or patient's healthcare record or an individual's or patient's healthcare file; and

transmitting the message to a communication device of the individual or patient via, on, or over, a communication network, wherein the message is transmitted to the communication device of the individual or patient at least one of during, concurrently with, at a same time as, and prior to a completion of, at least one of an accessing, an obtaining, a changing, an altering, and a modifying, of the information contained in an individual's or patient's healthcare record or an individual's or patient's healthcare file by the person or the entity, or at least one of during, concurrently with, at a same time as, and prior to a completion of, a processing of the request to at least one of access, obtain, change, alter, and modify, the information contained in an individual's or patient's healthcare record or an individual's or patient's healthcare file.

'048 CLAIM 10:

The computer-implemented method of claim 2, wherein the communication device of the individual or patient is a wireless device, and further wherein the message is transmitted to the communication device of the individual or patient via, on, or over, at least one of the Internet, the World Wide Web, and a wireless communication network.

'048 CLAIM 20:

A computer-implemented method, comprising:

receiving information regarding a restriction or limitation regarding an ability of a person or an entity to at least one of access, obtain, change, alter, and modify, information contained in an individual's or patient's healthcare record or an individual's or patient's healthcare file, wherein the individual's or patient's healthcare record or the individual's or patient's healthcare file contains healthcare information or healthcare-related information personal to the individual or patient, wherein the restriction or limitation contains information regarding at least one of a healthcare provider, a healthcare payer, a healthcare insurer, and an authorized entity, and information regarding a designated purpose for allowing each of the at least one of a healthcare provider, a healthcare payer, a healthcare insurer, and an authorized entity, to at least one of access, obtain, change, alter, and modify, the information contained in an individual's or patient's healthcare record or an individual's or patient's healthcare file, wherein the designated purpose is at least one of to perform a diagnosis, to perform a diagnosis for a certain ailment, illness, or symptom, to provide a second opinion, to verify or disprove a condition or a pre-existing condition, to submit an insurance claim, and to process an insurance claim;

storing the information regarding a restriction or limitation regarding an ability of a person or an entity to at least one of access, obtain, change, alter, and modify, the information contained in an individual's or patient's healthcare record or an individual's or patient's healthcare file;

processing, with a processor, a request by a person or an entity to at least one of access, obtain, change, alter, and modify, the information contained in an individual's or patient's healthcare record or an individual's or patient's healthcare file;

determining, using the information regarding the restriction or limitation, whether the person or the entity is allowed or authorized to at least one of access, obtain, change, alter, and modify, the information contained in an individual's or patient's healthcare record or an individual's or patient's healthcare file;

generating a message containing at least one of information regarding the person or the entity making the request, and identification information regarding the person or the entity making the request, and further wherein the message contains an actual change, alteration, or modification, made to the information contained in

an individual's or patient's healthcare record or an individual's or patient's healthcare file; and

transmitting the message to a communication device of the individual or patient via, on, or over, a communication network, wherein the message is transmitted to the communication device of the individual or patient at least one of during, concurrently with, at a same time as, and prior to a completion of, an at least one of an accessing, an obtaining, a changing, an altering, and a modifying, of the information contained in an individual's or patient's healthcare record or an individual's or patient's healthcare file by the person or the entity, or at least one of during, concurrently with, at a same time as, and prior to a completion of, a processing of the request to at least one of access, obtain, change, alter, and modify, the information contained in an individual's or patient's healthcare record or an individual's or patient's healthcare file.

'048 CLAIM 21:

The computer-implemented method of claim 2, further comprising:

    storing information regarding a schedule of a healthcare provider;

    receiving information regarding an appointment made by the individual or patient with the healthcare provider; and

    updating the information regarding a schedule of the healthcare provider to include the information regarding an appointment made by the individual or patient with the healthcare provider.

'048 CLAIM 22:

The computer-implemented method of claim 21, further comprising:

    transmitting a second message to the communication device of the individual or patient, wherein the second message contains information confirming the appointment made by the individual or patient with the healthcare provider or containing information reminding the individual or patient of the appointment made by the individual or patient with the healthcare provider.

'048 CLAIM 23:

The computer-implemented method of claim 2, further comprising:

    storing information regarding a schedule of a healthcare provider;

    receiving information regarding an appointment made by a second individual or second patient with the healthcare provider; and

    updating the information regarding a schedule of the healthcare provider to include the information regarding an appointment made by the second individual or second patient with the healthcare provider.

'048 CLAIM 24:

The computer-implemented method of claim 2, further comprising:

receiving a request from the individual or patient or from a second individual or second patient to locate a healthcare provider or a healthcare facility for the individual or patient or for the second individual or second patient;

identifying a healthcare provider or a healthcare facility in response to the request to locate a healthcare provider or a healthcare facility for the individual or patient or for the second individual or second patient;

generating a second message containing information regarding a healthcare provider or a healthcare facility responsive to the request to locate a healthcare provider or a healthcare facility for the individual or patient or for the second individual or second patient; and

transmitting the second message to the communication device of the individual or patient or to a second communication device of the individual or patient or of the second individual or second patient.

'048 CLAIM 25:

The computer-implemented method of claim 2, further comprising:

receiving a request to locate a supply, medication, body organ, or blood;

generating a second message containing information regarding a located supply, medication, body organ, or blood, in response to the request to locate a supply, medication, body organ, or blood; and

transmitting the second message to the communication device of the individual or patient or to a second communication device of the individual or patient or of a second individual or second patient.

'048 CLAIM 26:

The computer-implemented method of claim 2, further comprising:

receiving a request to locate a healthcare insurer or a healthcare payer; generating a second message containing information regarding a located healthcare insurer or healthcare payer in response to the request to locate a healthcare insurer or a healthcare payer; and

transmitting the second message to the communication device of the individual or patient or to a second communication device of the individual or patient or of a second individual or second patient.

'048 CLAIM 27:

The computer-implemented method of claim 2, further comprising:

receiving a response to the message, wherein the response to the message is transmitted from the communication device of the individual or patient, and further wherein the response to the message contains information for allowing the at least one of an accessing, an obtaining, a changing, an altering, and a modifying, of information contained in the individual's or patient's healthcare record or the individual's or patient's healthcare file;

allowing the request to at least one of access, obtain, change, alter, and modify, the information contained in an individual's or patient's healthcare record or an individual's or patient's healthcare file; and

updating the information contained in the individual's or patient's healthcare record or the individual's or patient's healthcare file with the information regarding the individual or patient.

'048 CLAIM 28:

The computer-implemented method of claim 2, further comprising:

receiving information regarding the individual or patient or regarding a second individual or second patient, wherein the information regarding the individual or patient or regarding the second individual or second patient is transmitted from a computer or communication device associated with or used by a healthcare provider of the individual or patient or of the second individual or second patient, and further wherein the information regarding the individual or patient or regarding the second individual or second patient contains information regarding at least one of a symptom, an examination finding, a diagnosis, a treatment, an administration of a treatment, and a procedure;

at least one of storing the information regarding the individual or patient or regarding the second individual or second patient and updating the individual's or patient's healthcare record or the individual's or patient's healthcare file or updating a healthcare record or a healthcare file of, for, or associated with, the second individual or second patient;

generating an insurance claim in response to the storing of the information regarding the individual or patient or regarding the second individual or second patient or in response to the updating of the individual's or patient's healthcare record or the individual's or patient's healthcare file or the updating of the healthcare record or the healthcare file of, for, or associated with, the second individual or second patient, wherein the insurance claim is suitable for being automatically submitted to a healthcare insurer or a healthcare payer associated with the individual or patient or associated with the second individual or second patient or is suitable for being automatically transmitted to a computer or communication device associated with a healthcare insurer or a healthcare payer associated with the individual or patient or associated with the second individual or second patient; and

transmitting the insurance claim to the computer or communication device associated with the healthcare insurer or the healthcare payer associated with the individual or patient or associated with the second individual or second patient.

'048 CLAIM 29:

The computer-implemented method of claim 28, further comprising:

updating the individual's or patient's healthcare record or the individual's or patient's healthcare file, or updating a healthcare record or a healthcare file of, for, or associated with, the second individual or second patient, to include information regarding the transmitting of the insurance claim to the computer or communication device associated with the healthcare insurer or the healthcare payer associated with the individual or patient or associated with the second individual or second patient.

'048 CLAIM 30:

The computer-implemented method of claim 2, further comprising:

storing information regarding at least one of a symptom, an examination finding, a diagnosis, a treatment, an administration of a treatment, and a procedure, regarding the individual or patient or regarding a second individual or second patient;
generating a second message containing at least one of information regarding a diagnosis, information regarding a list of possible diagnoses, and information regarding a treatment; and

transmitting the second message to a computer or communication device associated with a healthcare provider of the individual or patient or of a second individual or second patient, to the communication device of the individual or patient, or to a second communication device of the individual or patient or of the second individual or second patient.

'048 CLAIM 31:

The computer-implemented method of claim 2, further comprising:

generating a second message containing information regarding a prescribed treatment for the individual or patient of for a second individual or patient; and transmitting the second message to a computer or communication device associated with a healthcare provider of the individual or patient or of the second individual or second patient.

'048 CLAIM 32:

The computer-implemented method of claim 2, further comprising:

updating the individual's or patient's healthcare record or the individual's or patient's healthcare file with information regarding a diagnosis or a prescribed treatment, or updating a healthcare record or a healthcare file of, for, or associated with, a second individual or second patient with information regarding a diagnosis or a prescribed treatment.

'048 CLAIM 33:

The computer-implemented method of claim 2, further comprising:

receiving information regarding a treatment to be administered to the individual or patient or to be administered to a second individual or second patient or information regarding a procedure to be performed on the individual or patient or a procedure to be performed on a second individual or second patient;

processing the information regarding a treatment to be administered to the individual or patient or to be administered to the second individual or second patient or the information regarding a procedure to be performed on the individual or patient or a procedure to be performed on the second individual or second patient;

generating a second message containing information regarding whether the treatment to be administered to the individual or patient or to be administered to the second individual or second patient, or whether the procedure to be performed on the individual or patient or the procedure to be performed on the second individual or second patient, is correct or incorrect; and

transmitting the second message to a computer or communication device associated with or used by a healthcare provider or a healthcare facility.

'048 CLAIM 34:

The computer-implemented method of claim 2, further comprising:

receiving a request to evaluate at least one of a diagnosis and a treatment regarding the individual or patient or regarding a second individual or second patient;

processing the request;

generating a second message in response to the request, wherein the second message contains information regarding whether or not the at least one of a diagnosis and a treatment regarding the individual or patient or regarding a second individual or second patient is appropriate or in-line with a current standard; and

transmitting the second message to a computer or communication device associated with or used by a healthcare insurer or a healthcare payer of the individual or patient, a healthcare insurer or a healthcare payer of the second individual or second patient, the individual or patient, the second individual or second patient, a healthcare provider of the individual or patient, or a healthcare provider of the second individual or second patient.

'048 CLAIM 35:

The computer-implemented method of claim 2, further comprising:

generating a second message containing information regarding an admitting of the individual or patient or an admitting of a second individual or second patient to a hospital or to a healthcare facility or containing information regarding a diagnosis regarding the individual or patient or regarding a second individual or second patient; and

transmitting the second message to a computer or communication device associated with or used by a healthcare provider, a healthcare insurer, or a healthcare payer.

'048 CLAIM 36:

The computer-implemented method of claim 2, further comprising:

generating a second message containing information that a healthcare provider is available to perform a treatment or a procedure; and
transmitting the second message to the communication device of the individual or patient or to a second communication device associated with or used by the individual or patient or associated with or used by a second individual or second patient.

'048 CLAIM 37:

The computer-implemented method of claim 2, further comprising:

receiving and storing information regarding a restriction or limitation regarding an ability of the person or the entity, or regarding an ability of a second person or a second entity, to access the information contained in an individual's or patient's healthcare record or an individual's or patient's healthcare file, wherein the information regarding a restriction or limitation is transmitted from the communication device or is transmitted from a second communication device of or used by the individual or patient; and

determining, using the information regarding a restriction or limitation, whether the person or the entity is allowed or authorized to access the information contained in an individual's or patient's healthcare record or an individual's or patient's healthcare file.

'048 CLAIM 38:

The computer-implemented method of claim 37, wherein the information regarding a restriction or limitation contains information regarding at least one of a healthcare provider, a healthcare payer, a healthcare insurer, and an authorized entity, and information regarding a designated purpose for allowing each of the at least one of a healthcare provider, a healthcare payer, a healthcare insurer, and an authorized entity, to access the information contained in an individual's or patient's healthcare record or an individual's or patient's healthcare file, wherein the designated purpose is at least one of to perform a diagnosis, to perform a diagnosis for a certain ailment, illness, or symptom, to provide a second opinion, to verify or disprove a condition or a pre-existing condition, to submit an insurance claim, and to process an insurance claim.

'048 CLAIM 39:

The computer-implemented method of claim 37, wherein the information regarding a restriction or limitation contains information for restricting or limiting access by the person or the entity, or for restricting or limiting access by a second person or a second entity, to a portion or portions of, or to a section or sections of, the information contained in an individual's or patient's healthcare record or an individual's or patient's healthcare file.

'048 CLAIM 40:

The computer-implemented method of claim 2, further comprising:

storing information regarding a restriction or limitation regarding an ability of the person or the entity, or regarding an ability of a second person or a second entity, to access the information contained in an individual's or patient's healthcare record or an individual's or patient's healthcare file; and

determining, using the information regarding a restriction or limitation, whether the person or the entity is allowed or authorized to access the information contained in an individual's or patient's healthcare record or an individual's or patient's healthcare file.

# <u>CERTIFICATE OF INTEREST</u>

The undersigned counsel for the Plaintiff-Appellant certifies the following, pursuant to Federal Circuit Rule 47.4:

(i)    The full name of every entity represented by me in this case is:

   Decapolis Systems, LLC

(ii)    The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

   N/A

(iii)   All parent corporations and any publicly held companies that own 10 percent or more of the stock of the entity represented by me are:

   N/A

(iv)   The names of all law firms, partners, and associates that have not entered an appearance in the appeal, and (A) appeared for the entity in the lower tribunal; or (B) are expected to appear for the entity in this court, are:

   **GARTEISER HONEA, PLLC**
   Michael Scott Fuller
   Christopher A. Honea
   Randall T. Garteiser
   Rene Vazquez

   **MARK J. KESTEN, P.L.**
   Mark J. Kesten

(v)   Other than the originating case number(s), the title and number of any cases known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal.

   None.


Date: February 14, 2025          */s/ Randall Garteiser*_____
                                 Randall Garteiser

# TABLE OF CONTENTS

PATENT CLAIMS AT ISSUE ........................................................................III

CERTIFICATE OF INTEREST ....................................................................XXI

TABLE OF CONTENTS ....................................................................... XXIII

TABLE OF AUTHORITIES .......................................................................XXV

I.    STATEMENT OF RELATED CASES ..............................................1

II.   STATEMENT OF JURISDICTION ................................................2

III.  STATEMENT OF THE ISSUES ...................................................3

IV.   STATEMENT OF THE CASE AND FACTS ......................................4

   A.   The Asserted Claims and Accused Instrumentalities ..........................4
   B.   The Underlying Motions and the District Court's Orders ...................5
   C.   The Orders Granting Plaintiff's Motion for Fees. ................................6

V.    SUMMARY OF THE ARGUMENT ...............................................6

VI.   ARGUMENT ...........................................................................7

   A.   Legal Principles and Standard of Review.............................................7
   B.   The District Court Erred in its Analysis ..............................................7
      1.   The Court abused its discretion as to "the merits of the
            declaratory judgment claim[s]." ....................................................8
      a.      Epic's Actions As The Moving Party for § 285 Sanctions...........8
      b.      Decapolis' Actions As The Non-Moving Party.........................11
      2.   The Court Abused its Discretion By Relying on Conjecture. .......13
      3.   Decapolis Pursued Specific Patent Claims In Good Faith. ..........16
      4.   The Court Did Not Address Epic's Improper Conduct. ...............18

5.  Decapolis' Decision to Defend the Validity Of Its Issued Patent Claims from the USPTO was Not Done in Bad Faith. ...........................................................................21

6.  Uncertainty in the §101 Law Was Not Properly Considered by the Court...................................................................24

7.  The Good Faith Belief in Decapolis of Subject Matter Patentability was Not Considered by the Court..........................25

8.  Invalidity under Section 101 was Not Apparent. ..........................26

A.  The District Court Erroneously Compared Claims...........................28

B.  The District Court Erred in its Step Two Analysis...........................29

C.  The District Court Erred in Not Allowing Amendment ....................30

VII.  CONCLUSION AND PRAYER FOR RELIEF ...............................................31

# TABLE OF AUTHORITIES

## CASES

*Ancora Techs., Inc. v. HTC America, Inc.,* 908 F.3d 1343, 1345, 1348 (Fed. Cir. 2018) ................................................................................................27, 29

*Data Engine v. Google,* 906 F.3d 999, 1007-1008 (Fed. Cir. 2018) .................27, 29

*Energy Heating, LLC v. Heat On-The-Fly, LLC,* 15 F.4th 1378, 1382 (Fed. Cir. 2021) ..............................................................................................................7

*Ex Parte Joao,* 2017 WL 2303383 at *1-2 (PTAB, 2017) .....................................28

*Finjan v. Blue Coat Systems,* 879 F.3d 1299, 1304-05 (Fed. Cir. 2018) ..........27, 29

*Fogerty v. Fantasy, Inc*., 510 U.S. 517, 534 n.19 (1994)..........................................8

*Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.,* 572 U.S. 559, 563–64 (2014) ................................................................................................................7

*MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 915 (Fed. Cir. 2012)...........13

*Octane Fitness, LLC v. ICON Health & Fitness, Inc*., 572 U.S. 545, 554 (2014) ...........................................................................................................passim

*Realtime Adaptive Streaming LLC v. Sling TV, LLC*, 113 F.4th 1348, 1354 (2024)........................................................................................................passim

*SRI Int'l, Inc. v. Cisco Systems, Inc.,* 930 F.3d 1295, 1303 (Fed. Cir. 2019)....27, 29

*TecSec, Inc. v. Adobe, Inc.,* 978 F.3d 1278, 1292-93 (Fed. Cir. 2020) .......26, 27, 28

## STATUTES

28 U.S.C. § 1331 .....................................................................................................2

28 U.S.C. § 1338 .....................................................................................................2

28 U.S.C. § 1400 .....................................................................................................2

28 USC. 1295 ..........................................................................................................2

35 USC 285 ....................................................................................................passim

# I.     STATEMENT OF RELATED CASES

Pursuant to Federal Circuit Rule 47.5(a), counsel for Defendant-Appellant, Decapolis Systems LLC ("Decapolis"), hereby states that the civil case underlying this appeal has been previously appealed to this Court as Case No. 2023-1302 with the same short caption *Epic Systems Corporation v. Decapolis Systems, LLC.*

Pursuant to Federal Circuit Rule 47.5(b), counsel for Decapolis further states that there are no cases pending that will directly affect or be directly affected by this court's decision in the pending appeal.

## II.    STATEMENT OF JURISDICTION

Decapolis brings this Appeals from the District Court, including in accordance with 28 USC §1295(a)(1).  Fed.R.App.P. 4(a)(4)(B)(i).  The pending action arose under the United States Patent Laws and jurisdiction, including in accordance with, and pursuant to, 28 U.S.C. §§1331, 1338(a) and 1400(b).

Decapolis takes this appeal from the final judgment entered in the lower case by the District Court, based upon the Court's clearly erroneous granting of Plaintiff's not the defending Defendant's violation of 35 USC § 285.

## III.   STATEMENT OF THE ISSUES

1.      Whether the District Court abused its discretion in finding this case exceptional under Section 285.

2.      Whether the amount of the award was appropriate assuming the case was exceptional under Section 285.

## IV.   STATEMENT OF THE CASE AND FACTS

**A.   THE ASSERTED CLAIMS AND ACCUSED INSTRUMENTALITIES**

The Asserted Patents each relate to specific systems or methods for processing requests for access to personal healthcare records and generating messages containing charges to such records, thereby providing for comprehensive patient health reports and more informed treatments.   Below are the patent claims that Counterclaim Defendant Decapolis asserted against Declaratory Judgment Plaintiff Epic in the SDFL case being appealed: Claims 1 and 46 of United States Patent No. 7,464,040; and Claims 1, 2, 10, 20, and 22-40 of United States Patent No. 7,490,048.

The Declaratory Judgment Plaintiff, Epic Systems, makes, uses, and sells a multitude of infringing software systems and platforms to and for the benefit of physicians and patients throughout the United States.   Such systems and services broadly include an interconnected network of software and hardware for providing the infringing healthcare data platforms.   A representative of Epic's Accused Instrumentality is illustrated below:



Case 9:22-cv-80173-DMM   Document 98-14   Entered on FLSD Docket 02/21/2023   Page 5 of 145

*Figure 1 - Excerpt of Epic's website taken from Decapolis' Patent Infringement Contentions. Appx0533; Appx0529-0673.*

Epic is the maker of the Accused Instrumentality software. But according to Epic, it is not a healthcare provider. Therefore, direct infringement, according to Epic, requires one of Epic's customers, who employs Epic's software as a healthcare provider, to directly infringe the Asserted Claims.

**B.    THE UNDERLYING MOTIONS AND THE DISTRICT COURT'S ORDERS**

Declaratory Judgment Plaintiff Epic filed its Motion for Attorney's Fees and Costs. By stipulation, the parties bifurcated Epic's Section 1985 motion until after resolution of patent ineligibility under Section 101. On remand, the parties renewed

their briefing on Epic's Motion for Fees and Costs. Decapolis did not dispute the amount of costs, and it paid the Court's award of costs to Epic. Appx0008. However, Decapolis continues to dispute that this case is exceptional under Section 285 and additionally the excessive amount of the award compared to the size of Decapolis and actions of Epic that increased the cost of the litigation, such as not simply moving for judgment on the pleadings sooner. Appx0001-0017; Appx0018-0019.

## C.    THE ORDERS GRANTING PLAINTIFF'S MOTION FOR FEES.

The District Court's faulty analysis of what constitutes "exceptionality" under Section 285 is set forth in its Orders dated July 30, 2024, Appx0001-0017 (hereafter, the "Order") and dated November 25, 2024 (Suppl. Order) Appx0018-0019. Chiefly, the Order recites: "I find that this case is 'exceptional' for **two primary reasons**: [1] the merits of the declaratory judgment claim and [2] Defendant's conduct." Appx0010.

## V.    SUMMARY OF THE ARGUMENT

Decapolis did not try to escape Epic's choice of forum for its declaratory judgment action. Rather, Decapolis embraced the SDFL forum Epic chose, and Decapolis filed its counterclaims for patent infringement. These are the actions of a patentee that firmly believed its patents were valid, enforceable, and eligible (having been allowed over a multitude of prior art), and reflect what any patentee would have done in similar circumstances: defend its presumptively valid intellectual property against a declaratory judgment plaintiff. The District Court abused its discretion in

finding this case exceptional.

## VI.    ARGUMENT

### A.    LEGAL PRINCIPLES AND STANDARD OF REVIEW

A court may award fees to the prevailing party in "exceptional cases." 35 U.S.C. § 285. An exceptional case is "one that stands out from others with respect to the substantive strength of a party's litigating position . . . or the unreasonable manner in which the case was litigated." *Realtime Adaptive Streaming LLC v. Sling TV, LLC*, 113 F.4th 1348, 1354 (2024) (citing *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014)).

"We review an exceptionality determination under an abuse of discretion standard." *Id.* (citing *Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.,* 572 U.S. 559, 563–64 (2014)). "To meet the abuse-of-discretion standard, the appellant must show a 'clear error of judgment in weighing relevant factors or in basing its decision on an error of law or on clearly erroneous factual findings.'" *Realtime Adaptive Streaming LLC*, 113 F.4th at 1354 (citing *Energy Heating, LLC v. Heat On-The-Fly, LLC,* 15 F.4th 1378, 1382 (Fed. Cir. 2021)).

Other legal principles applicable to the District Court's erroneous grant of Defendants' Motions for Judgment are noted herein, as applicable.

### B.    THE DISTRICT COURT ERRED IN ITS ANALYSIS

The Court abused its discretion in applying the *Octane Fitness* Factors.

**1. The Court abused its discretion as to "the merits of the declaratory judgment claim[s]."**

An *Octane Fitness* inquiry includes "frivolousness, motivation, objective unreasonableness (both in the legal and factual components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Octane Fitness*, 572 U.S. at 554 n.6 (citing *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994)).

**a. Epic's Actions As The Moving Party for § 285 Sanctions.**

Plaintiff Epic moved for a declaratory judgment of non-infringement of the '040 and '048 Patents and only invalidity as to the claims of the '040 Patent. Appx2463-2464. Epic had already indicated it was a software company and not a healthcare provider, which led to it being *dismissed without prejudice* by Decapolis in the United States District Court for the Western District of Texas ("WDTX") even though Decapolis did not agree with that distinction alone was sufficient to avoid infringement; rather, it was a claim construction issue to be resolved.

-8-



Case 9:22-cv-80173-DMM   Document 98-14   Entered on FLSD Docket 02/21/2023   Page 4 of 145

*Figure 2 - Excerpt of Decapolis' Patent Infringement Chart for the '048 Patent of Epic's Accused Instrumentality. Appx0465, Appx0642-0528; see also* Appx0532, Appx0529-0673.

One issue is that Epic had a platform that acted as a portal for all or some of its healthcare providers and their patients called <u>MyChart</u> found at https://www.mychart.org.  Appx0463-0528; Appx0530-066*9.*

Epic's direct infringement, despite its position that it could not infringe based on being only a software company is highlighted in Decapolis's Patent Infringement Charts served on Epic in the SDFL Court for both the '040 Patent and the '048 patent. Appx0462-0528; Appx0529-0673.

Importantly, on February 2, 2022, Epic initially sought a declaratory judgment of invalidity only for the claims of '040 Patent. Epic specifically did not seek a declaratory judgment as to the claims of the '048 Patent even though it wanted a declaratory judgment of non-infringement with respect to both the '040 Patent and the

'048 Patent in its original complaint. Appx2458-2466. Epic added that declaratory judgment cause of action much later on April 14, 2022. *Compare* Appx2458-2466 *with* Appx2499-2508.

The late amendment by Epic to add a declaratory judgment action for both patents and not just the '040 patent did not alert Decapolis to the allegation that somehow its patents were weak and not patentable under Section 101. Appx2505; Appx2449-2508. If that were true, Epic would have moved initially to invalidate both patents, not just one. Epic would have mentioned a lack of patentability in its complaints and provided its PTAB proceedings that it relied on later to invalidate the patents under Section 101 as evidence of a lack of patentability. Epic did not do this. Also, Epic did not need to remain silent in a case management conference on April 14, 2022, and agree to a schedule that involved discovery, on the same day it amended to add a declaratory judgment action under § 101 with respect to the '048 Patent, as if it was an afterthought six weeks following Epic filing its initial original complaint for declaratory judgment on February 2, 2022. Appx2463, 2458-2466. This is relevant in the totality of circumstances as evidence not in support of 'exceptional strength' of Epic's position that the Court abused its discretion in not factoring into the real-time way this case developed. And if Epic did know at this time and hid it from the Court and Decapolis, then that is evidence the supports an improper motivation to hid the ball and run up the costs and fees, which is a violation of Rule 1 by Epic and conduct that itself would be exceptional as to Epic's conduct.

### b. Decapolis' Actions As The Non-Moving Party.

Based on its pre-suit investigations, Defendant Decapolis knew healthcare providers implementing Epic's software on its personalized platform, infringed the '040 and '048 Patents.[1] Patentee in the role reversed as a Defendant in SDFL, Decapolis spent considerable resources preparing its infringement claim charts proving infringement by Epic, including 66 pages of infringement charts for claims 1 and 46 of the '040 Patent [Appx0463-0528] and 144 pages of infringement charts for claims 1, 2, 10, 20, 22, 23, 24, 27, 28, 29, 30, 31, 32, 35, 36, 37, 38, 39, and 40 of the '048 Patent. Appx0530-0669.

Decapolis also spent considerable resources preparing patent infringement charts for some of Epic's customers with examples cited here to support this statement. *Appx0674-Appx0806; Appx0807-1074; Appx1075-1224; Appx1225-1563; Appx1564-1671; Appx1673-1913.* This was not a situation where a plaintiff put in minimum effort into a lawsuit to try to extract a settlement, as Epic implied and the Court erroneously found. Rather, Decapolis pursued infringement with every intention of prevailing on a finding of infringement to recover a reasonable royalty.

---

[1] The American Invents Act has forced patentees to file patent infringement cases separately. Then, post *T.C. Heartland*, the U.S. Supreme Court clarified that Plaintiffs are required to file patent infringement litigation in specific venues to comply with Title 28 U.S.C. § 1400(b). With other provisions and case law limiting the period of enforceability of patent claims based upon prior notice, Plaintiffs have to file multiple lawsuits in separate districts. Again, before AIA one lawsuit could be filed. Here, Decapolis would have preferred to file just one lawsuit against Epic and its customers in one dispute, but procedurally, that was not allowed.

Under the totality of the circumstances, the District Court abused its discretion when it did not consider this exculpatory evidence of Decapolis' legal and factual good faith motivation for litigating was based on its strong infringement position, and its good faith belief both patents were valid and enforceable. *Realtime Adaptive Streaming LLC*, 113 F.4th at 1354 (citing *Octane Fitness*, 572 U.S. at 554 (district court based its decision, as it must, on "the totality of the circumstances.")).

When Decapolis got sued by Epic in SDFL, Decapolis rightfully and properly defended itself against the assertions of Epic in its Amended Complaint that both the '040 Patent and the '048 Patent were unpatentable under Section 101. Appx2499-1508 [Epic's 14APR22 Amended Complaint].

Decapolis accepted Epic's challenge to resolve the Section 101 patentability issue in SDFL. Decapolis had every intention of prevailing over Epic's Section 101 Judgment on the Pleadings Motion. Epic picked the SDFL forum to file its declaratory judgment action, and Decapolis did not move to change venue even when it amended its complaint to add a count for a declaratory judgment of invalidity as to the '048 Patent. Decapolis vigorously defended itself by presenting valid and reasonable arguments as to eligibility, which it had every right to do. These factual actions of Decapolis are inconsistent with a finding of exceptional behavior to support Section 285 standards. *Realtime Adaptive Streaming LLC*, 113 F.4th at 1354 (citing *Octane Fitness*, 572 U.S. at 554.)

Again, the SDFL Court did not allow Decapolis to amend its complaint to explain patentability in more detail. Appx2514 [FLSD Dkt. 77 at 3] ("Allowing the inclusion of this expert report would likely require re-briefing of the Judgment on the Pleadings. In addition, such an 'amendment' would be futile because on a judgment on the pleadings, an expert report would not be appropriate to consider.").

While the Court ruled it was not appropriate to consider an expert report on patentability from Decapolis on a judgment on the pleadings ruling, Decapolis contends that it was an abuse of discretion for the Court not to weigh this evidence of good faith on behalf of Decapolis under the totality of circumstances in finding this case was exceptional against Decapolis.

Nothing Decapolis did in defending itself was unusual, much less extraordinary. Decapolis fought hard to defend its patents and even procured expert testimony to aid the Court in a manner consistent with another case involving Decapolis. It was an abuse of discretion for the Court to ignore it altogether when it was directly contrary to the Court's finding under its Section 285 analysis that the Decapolis' asserted patent claims were "weak." *Realtime Adaptive Streaming LLC*, 113 F.4th at 1359 (citing *MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 915 (Fed. Cir. 2012)) (holding that considering an expert opinion is left to the discretion of the district court may be correct as a general principle, "the district court's 'discretion is not unbridled.'").

## 2. The Court Abused its Discretion By Relying on Conjecture.

Relying upon simple banter from Circuit Judge Chen at the beginning of oral argument at the Federal Circuit, the District Court relied on pure conjecture to find this case exceptional, resulting in an extreme award of over $600,000 to Epic.[2] Appx0011.

The Court's improper reliance on conjecture in at least three (3) specific stances was an abuse of discretion. The first part of the Court's order was impartial and appropriate when it methodically applied the law to the facts to determine a cost award to the prevailing party of $1,117.00. But then for the Section 285 portion of the order, the Court viewed all facts in a light *least* favorable to Decapolis, including agreeing with conjecture raised by Epic and then awarding over $600,000.00 solely because the Court did not like Decapolis, or the inventor Ray Joao, on a personal level because the Court perceived Decapolis as non-practicing entity. Below are just a few of the examples of the Court relying on pure conjecture in its Section 285 analysis:

> "**Defendant *appears* to be a serial litigant** that uses form complaints to extract settlements from litigants." Appx0012.

> "**Defendant *apparently* refused** to agree to stay the litigation in Southwestern Health Sys., No. 2:22-cv-00159, after I issued my final judgment invalidating the subject patents, despite the doctrine of collateral estoppel." Appx0015.

> "**Defendant has *apparently* continuously propounded meritless arguments** against both Plaintiff and its customers despite its substantively weak position and arguments as well as consistently attempted to exploit its status as a patent holder to extract settlements from third parties. Appx0015.

---

[2] Patentee Decapolis paid the about $1,117.00 costs awarded to Epic. Appx0008. Decapolis does not challenge any portion of that well-reasoned portion of the Court's Order. Appx0001-0008.

-14-

"Even despite my final judgment in this case, **it appears that Defendant has continued its path of targeting Plaintiff's customers** and forcing Plaintiff to incur substantial and unnecessary." Appx0014.

"Epic is a serial patent infringer" is not an appropriate statement to appear in a Court order anymore than a Court claiming that "Decapolis *appears to be* a serial litigant." Appx0012. The Federal Circuit Chief Judge explains a district court should be an umpire that calls balls and strikes, but this expensive award is substantial amount of money, over $600,000.00, and shows an insensitivity to the American Rule where loser does not pay. Here, the Court has abused its discretion favoring a monopolistic billion-dollar company over an inventor that is entitled to assert its patents on the only level playing field it has to do so, a United States District Court.  These Article III district courts of limited jurisdiction have exclusive jurisdiction. It is the only option inventors and patentees have to enforce their unique right to exclude others or at least be awarded a reasonable royalty rate for the infringement. Also, it was an abuse of discretion for the SDFL Court to claim in footnote four (4) that it was not going to rely on conjecture, and then proceed to do just that without acknowledging a smaller award of $50,000.00 would serve as an appropriate deterrence to Decapolis based on its financials. These are additional facts presented by the patentee, Decapolis, that the Court just ignores in its analysis.

Again, the Court's reliance on Judge Chen's ice breaker comment is an abuse of discretion. The Court's reliance on conjecture provided by Epic exemplifies the Court's hindsight analysis that standing alone itself is an abuse of discretion as it ignores the

totality of the circumstances. Here, Decapolis did nothing more than *defend* its patents in the Epic's chosen forum, which cannot be viewed as exceptional behavior. Again, Decapolis was the defendant, not the plaintiff in this conflict Epic initiated. Decapolis defended its patents and lost.  It is not an exceptional case that stands out from others.

**3. Decapolis Pursued Specific Patent Claims In Good Faith.**

Pursuant to its obligations, Decapolis reviewed all of its 86 patent claims, 46 claims of the '040 Patent and 40 claims of the '048 patent, and after conducting its pre-suit investigation, Decapolis selected 21 patent claims from the over 86 to bring narrowly tailored allegations of infringement against Epic's accused instrumentalities. Appx0154. Decapolis asserted just two (2) claims from the '040 patent (Appx0462-0528 [Exhibit 11] and nineteen (19) claims from the '048 patent (Appx0530 [Exhibit 12]). Decapolis served initial preliminary infringement contentions on September 14, 2021, in the WDTX Epic Case, and proceeded to request discovery of Epic's source code for the accused instrumentalities to supplement its infringement contentions. Appx0154, Appx0184. On December 20, 2021, Decapolis dismissed the WDTX Epic Case after serving its preliminary patent infringement contentions, contentions that Epic never moved to strike in that case or in the present case.  Appx0154, Appx0184. Discovery revealed a healthcare provider implementing Epic's provided software infringed, and Decapolis dismissed its action against Epic.  Then, Epic moved for a declaratory judgment of non-infringement in SDFL.  Having previously dismiss Epic under Rule 41, Decapolis could have stipulated to no infringement and removed the

case or controversy in SDFL, as again it was a declaratory judgment proceeding Epic initiated.

The SDFL Court's argument relating to other proceedings before the USPTO involving the inventor is not fully articulated by the SDFL Court and is in any event purely conclusory. In essence, the SDFL relied on the non-allowance of *other* claims prosecuted by the inventor, Ray Joao, as some sort of notice that the claims at issue here, which *were* allowed, should not be defended. In the process, the SDFL Court dismissed the citations provided to the changing rules at the PTO with respect to how to interpret Section 101 patentability. Appx1986-1991; Appx1992-2019. The SDFL Court clearly erred in pointing to USPTO proceedings that involved different patent claims and unknown motivations of the inventor in those PTAB proceedings, including whether to expend additional financial resources by inventor Raymond Joao to continue to prosecute those two patent applications. There was not an Article III ruling on an issued patent or patents. By comparison, in *Realtime Adaptive Streaming LLC*, 113 F.4th at 1357-1358, there were actual unpatentability decisions under Section 101 from two other district courts that a district court relied upon to be a factor or flag that the case was exceptional because the accused infringer pointed those out conclusively in a letter to the patentee.

The Federal Circuit held that it was insufficient to justify a finding that the case was exceptional. *Id.* Indeed, the Court explained that if "such a notice letter were sufficient to trigger § 285, then every party would send such a letter setting forth its

complaints at the early stages of litigation to ensure that—if it prevailed—it would be entitled to attorneys' fees." *Realtime Adaptive Streaming LLC*, 113 F.4th at 1357-1358.    Furthermore, on remand in *Realtime* the district court, armed with the clarification of the exceptionality requirement to award fees under Section 285, the "Court concludes that although plaintiff had reason to believe its claims were weak, the existence of the *Google* and *Netflix* decisions cannot, standing alone, establish by a preponderance that plaintiff's claims were exceptionally meritless or that requiring the parties to bear their own fees would constitute a gross injustice." *Realtime Adaptive Streaming LLC v. Sling TV, LLC,* No. 1:17-cv-02097-RBJ, *23 (D. Col. Feb. 5, 2025) (Sr. J. Jackson).  Appx 2533.

**4.  The Court Did Not Address Epic's Improper Conduct.**

Epic is the maker of the Accused Instrumentality software. But according to Epic, it is not a healthcare provider.  In SDFL Court discovery, Epic made it impossible to evaluate the merits of Decapolis' case by stonewalling basic discovery, where Epic's counsel repeatedly responded that it "declines to produce any documents response to this Request based on the above objections."  Appx0364-0400. Epic generated a lot of discovery fees that it should not be compensated for in a Section 285 judgment as Epic manufactured them by stonewalling and not participating in the discovery in good faith. Epic's responses to request of production are just one example.  Appx0364-0400.  Epic had said all throughout 2022 that it would produce its source code as its customers did not have access to it.  But instead of explaining that to the Court, Epic's army of

attorneys spun the parties dispute to the SDFL Court, as if Decapolis was trying to work around the Court's stay, a ruling mentioned in the order finding this case exceptional. The reality was Christus Health would not simply acknowledge that it solely used just Epic software, or if it had also used another software provider or platform in the past 6 years. Appx0185 (at ¶7 (citing Exhibit 5 [Appx0430-0432]). Decapolis' counsel provided this information to the SDFL Court, but it was not considered in the Court's conclusory opinion. *Id.*

Decapolis wanted to know whether Epic was the only provider for Christus Health. Appx0185, Appx0426-0427.Epic's counsel that represented Christus Health, refused to provide an answer. Ultimately, the parties agreed to a stay at a conference with Judge Payne. But there was no malicious intent on behalf of Decapolis. Oddly, Epic seems to conveniently forget that it was pushing for the Christus Health case to proceed to appeal at the same time as this underlying SDFL case. And this was after Decapolis suggested staying the Christus Health case.

Initially, Epic flat out refused to provide the Accused Functionality source code, because it unilaterally determined it was not necessary. Appx0183-0193. Decapolis wanted to ensure infringement before proceeding in any cases, but Epic's counsel that represented Epic's customers consistently refused to provide the code, which was a good faith attempt on behalf of Decapolis to attempt to confirm infringement or non-infringement at the inception of the lawsuit to reduce costs and fees as required under Rule 1 of the Federal Rules of Civil Procedure.

Based on Decapolis' Rule 11 analysis, never challenged by Epic, thought Epic's customers did infringe, and wanted to get evidence of it via a source code inspection. Epic flat out refused. Appx1915-1918. This is the type of lack of cooperation by the moving party, here Epic, weighs against finding this case exceptional.

According to Epic, direct infringement required one of Epic's customers, who employs Epic's software as a healthcare provider to directly infringe the Asserted Claims. Decapolis provided the SDFL Court examples of those detailed patent infringement contentions that it served and that Epic's counsel, representing the Epic customers, importantly, never objected to. Appx0183-0193, Appx0187-0192. These detailed Decapolis patent infringement charts include Epic customers, such as Christus Health [Appx0675-0806; Appx0807-1074] and UT Southwestern Systems [Appx1564-1671; Appx1672-1914].

Similarly, it was an abuse of discretion misconstrue Decapolis' good faith and diligent pursuant of relevant discovery as illustrated by its efforts to litigate its patent infringement case with detailed patent infringement contention charts. Here, while this SDFL case resolved on a finding of unpatentable subject matter, this strong defense was not eluded to in Epic's Complaint for Declaratory Relief. Appx2458-2466. Epic presented it to the Court as an afterthought. With Epic moving for a declaratory judgment of invalidity as to claims of the '048 patent, only in Epic's amended SDFL complaint filed on April 14, 2022. *Compare* Appx2458-2466 *with* Appx2499-2508.

**5.   Decapolis' Decision to Defend the Validity Of Its Issued Patent Claims from the USPTO was Not Done in Bad Faith.**

An important point not considered in the totality of the circumstances by the Court is that patentee Decapolis got sued and as the defendant defended allegations for declaratory judgment of non-infringement and invalidity that eventually focused in on a motion for judgment on the pleadings based upon a lack of subject matter patentability under Section 101.  It was an abuse of discretion to punish Decapolis when it did everything possible for the Court to realize the mistake it made, including not allowing Decapolis to supplement its complaint with additional facts relevant to subject matter patentability, a defense never highlighted by Epic in its original complaint where it only moved for a declaratory judgment of invalidity a prayer reciting "A judgment that each of the claims of the '040 patent is invalid under one or more provisions of 35 U.S.C. §§ 101, 102, 103, and/or 112."  Appx2624.  This is hardly the type of disclosure that should forbid a court from allowing a Court to exclude evidence of patentability to address a later filed judgment on the pleadings zeroed in on just Section 101 patentability.

And similarly, Epic continued to hide its Section 101 patentability silver bullet to invalidate the second of two patents-in-suit, the '048 patent, until its Amended Complaint added a declaratory judgment reciting the following generic invalidity prayer: "A judgment that each of the claims of the '040 patent and '048 patent are invalid under one or more provisions of 35 U.S.C. §§ 101, 102, 103, and/or 112."

Appx2506; Appx2499-2508. Epic is now awarded fees under Section 285 for its conduct in preparing Epic's initial declaratory judgment complaint that it subsequently amended 6 weeks later. But was more concerning is that the Court awarded $405,281.08 in fees for the District Court case over the objection of Decapolis to remove fees associated with discovery as given the purported exceptionally strong position of Plaintiff Epic's declaratory judgment, it should have never agreed to participate in discovery at the scheduling conference as it was not required nor relied upon to move for judgment on pleadings based upon the single issue of a lack of patentability for the '040 Patent and the '048 Patent. It was an abuse of discretion to find this case exceptional, but putting that aside, it was improper for the Court in applying the *Octane factors* to conclude "The Plaintiff was forced to pursue discovery given the tight timeline contained within the scheduling order, and I find no reason to quarrel with the Plaintiffs staffing decision." Appx0119. Epic didn't need discovery. In fact, the Court refused patentee Decapolis to add additional facts to highlight patentability in an amended complaint, as if outside material was improper to be considered. Yet, although Epic relied upon an outside PTAB proceeding that it had never mentioned in its original declaratory judgment complaint or even its amended complaint never illuminated any lack of patentability facts, including these alleged PTAB proceedings that now form the basis of a "gotcha" moment. In hindsight analysis, the Court agrees with Epic that Decapolis should have known due to some undisclosed to the Court PTAB proceedings that the '040 and '048 patents were invalid

under § 101 due to a later in time applied broad, versus narrow, PTAB interpretation of patentability conducted on different draft patent claims.  This was an abuse of discretion considering Epic never even disclosed this silver bullet invalidity argument relying on again PTAB proceedings that Epic never even mentioned in either of its complaints. Appx2458-2466; Appx2499-2508.  Such a disclosure of a lack of patentability under 101 due to some PTAB proceedings upfront by Epic coupled with Decapolis continuing in the litigation to defend the validity of its issued '040 and '048 patents may have supported a finding of exceptionality, but that did not occur here. And instead under the totality of circumstances, the Court abused its discretion in not accounting for Epic's lack of transparency in its submissions to the Court.  In other words, Epic could have but choose not to alert the Court as to its silver bullet.  By not doing so, Epic participated in discovery that later the Court claimed it had to do under the schedule Epic stipulated too, while all along Epic knew it was going to file a judgment on the pleadings motion under Section 101.  Put another way, if the case was exceptionally strong, Epic sure did hide from the Court at the CMC hearing as well as Epic hid it from Decapolis, literally sneaking into the case its cause of action for invalidity of the '048 patent in the most vaguest of generic discloses in the very last paragraph of its amended complaint, ¶42, by merely reciting "Epic is entitled to a declaratory judgment that the claims of the '048 patent are invalid under one or more provisions of 35 U.S.C. §§ 101, 102, 103, and/or 112." Appx2506.  Such litigation strategy provided Epic with "Win," but it should not provide Epic with over $600,000

-23-

in fees under the American judicial system. This case was never exceptional under Section 285. And if Epic thought it was, it should not have hidden those facts from the Court and Decapolis by not listing them in Epic's complaints.

### 6. Uncertainty in the §101 Law Was Not Properly Considered by the Court

The Court abused its discretion when it did not address the significance of Decapolis' evidence presented to the Court as it relates to the confusion surrounding Section 101. Between 2018 and 2022 there was conflicting guidance on what would be allowed and what would not be allowed as patentable. In opposing Epic's motion to find this case exceptional under Section 285, Decapolis provided this documentation from the Commerce Department and the USPTO to the SDFL Court. Appx1986-1991; Appx1992-2019. This documentation was evidence of the confusion that applied to Epic's evidence those inventor Ray Joao PTAB rulings, as it showed how the USPTO had a knee jerk reaction after *Alice* and then it started to come back from its more extreme position with respect to computer-implemented improvements. This is a classic example of the patent issue pendelum swinging that the SDFL Court with a long break in patent cases did not properly evaluate under the *Octane Fitness* Factors. And these documents were the precursory to explain to the Court why in February 2022, when the USPTO awarded inventor Raymond Joao a notice of allowance for patent claims based upon similar patent specification and with a specific acknowledgement of subject matter patentability for those specific claims. Appx2054; Appx2054-2079. Decapolis believed it was appropriate to defend the validity of its previously allowed

-24-

'040 and '048 Patent in the declaratory judgment action Epic filed on February 2, 2022, as explained in more detail below.

### 7. The Good Faith Belief in Decapolis of Subject Matter Patentability was Not Considered by the Court.

The Court abused its discretion when it did not address the significance of Decapolis' evidence another related patent application being allowed over Section 101 on or about February 17, 2022.  Appx2054; Appx2054-2079.  Decapolis presented this evidence to the Court as Exhibit 25 in opposition to Epic's motion for fees.  It is a Notice of Allowance for patent application 16/202,448, which is a related patent application to the patents-in-suit. It shows right between the filing of Epic's original February 2, 2022, and Epic's amended complaint on April 14, 2022, that patentable subject matter for the patent specification shared with the previously issued and now being asserted '040 Patent and '048 Patent, had additional proposed patent "claims 1, 3, 6-8, and 15-22" that the Patent Examiner determined were directed to "Allowed Subject Matter." Appx2060. This notice of allowability was mailed on February 17, 2022. Appx2057. This evidence was not provided to the Court by Epic.  But under the totality of the circumstances, this shows the inventor's good faith belief, that the patents assigned to Decapolis, the '040 Patent and the '048 Patent, were not in the least suspectable to a subject matter challenge under Section 101. Appx0254-2079. This is just another example of a material fact weighing against a finding of this case being

-25-

exceptional that was not properly considered by the SDFL Court under the *Octane Fitness* Factors.

### 8. Invalidity under Section 101 was Not Apparent.

At the Step One phase, the proper approach is to determine what the Asserted Claims are "directed to" by evaluating what the patent itself asserts as the "focus" of the claimed advance over the prior art. *TecSec, Inc. v. Adobe, Inc.,* 978 F.3d 1278, 1292-93 (Fed. Cir. 2020). Such an analysis must remain true to the language of the claims themselves in light of the specification, and must be careful to avoid overgeneralizing the claims. *Id.* (citing cases). Of course, claims directed to software improvements can be patent-eligible when directed to non-abstract improvements to the functionality of a computer or network platform itself. *Id.* at 1293. In such situations, it is proper to make two inquiries: (i) is the focus of the claimed advance to a solution of a problem specifically arising in the realm of computers; and (ii) is the claim properly characterized as identifying a "specific" improvement in computer capabilities or network functionality, rather than only claiming a desirable result or function. *Id.* (collecting cases). Because the District Court failed to conduct a proper Step One inquiry, its Order arrives at erroneous conclusions.

The inventions of the Asserted Claims are described in the specification as "focusing" on advancing over the prior art by providing an electronic healthcare record system which, at the very least, can be accessible to, and which can be updated and used by, a plurality of healthcare providers and/or the patient himself, which can

provide for the communication of information from the provider and/or the patient in advance of a telehealth session, and which can further record and store any pertinent information regarding the telehealth session in the specific electronic healthcare record. *See* '048 Patent Abstract (Appx0084 at Abstract); *see also* '048 Patent at Claim 1 (Appx0141). Here, these Asserted Claims are drawn to consolidated and retrievable electronic healthcare records, which were of no widespread concern before the computer era. *See* '048 Patent at 1:50-65 (Appx0114) (describing the problem in terms of a lack of accurate and timely information). Moreover, the electronic health records solution of the Asserted Claims is plainly one in which a computer is implicated and required. *See id.* at Claim 1 (Appx0141). Finally, the Asserted Claims are not directed to abstract ideas because (ii) the claims are appropriately characterized as identifying a "specific" improvement in computer capabilities or network functionality rather than only claiming a desirable result or function. Just as was confirmed in the claims examined in *TecSec,* as well as those in *SRI Int'l, Inc. v. Cisco Systems, Inc.,* 930 F.3d 1295, 1303 (Fed. Cir. 2019); *Ancora Techs., Inc. v. HTC America, Inc.,* 908 F.3d 1343, 1345, 1348 (Fed. Cir. 2018); *Data Engine v. Google,* 906 F.3d 999, 1007-1008 (Fed. Cir. 2018); and *Finjan v. Blue Coat Systems,* 879 F.3d 1299, 1304-05 (Fed. Cir. 2018), the Asserted Claims here are specifically drawn to improving the functionality of health records management systems by incorporating the specific transmission of pertinent data to a user communication device concurrently with the health care visit.

The District Court, had it conducted a proper Step One analysis by *TecSec,* would have correctly identified the "focus" of the invention as "*providing a means by which healthcare professionals and patients can readily modify and obtain patient health data at the time of treatment*." Such a recitation of the focus remains true to the Asserted Claims without overgeneralizing. This is in contrast to the erroneous statement offered by the SDFL Court of simply "organizing patient information and communicating with patients." *TecSec,* 978 F.3d at 1293.

## A.    THE DISTRICT COURT ERRONEOUSLY COMPARED CLAIMS

Likewise, the District Court's reliance on *Ex Parte Joao* is misplaced, given that the claims in that case were merely directed to processing a record for payment. *Ex Parte Joao,* 2017 WL 2303383 at *1-2 (PTAB, 2017). Such is not the case with the Asserted Claims, since: (i) real-time access to updated health records via a patient communication device is a modern practice without historical analog; and (ii) transmission of health data concurrently with the health evaluation allows for far more accurate and beneficial treatment decisions.

To the extent comparisons are appropriate here, the District Court erred in failing to properly analyze the Asserted Claims as measured against those deemed patent eligible in, for example, *TecSec, Inc. v. Adobe, Inc.,* 978 F.3d 1278 (Fed. Cir. 2020). The claims in *TecSec* provided a specific solution for computer data networks and required specific features like "accessing an 'object-oriented key manager' and specified uses of a 'label' as well as encryption for the access management." *TecSec,*

978 F.3d at 1295-96.  The Asserted Claims similarly provide a specific solution to an internet-centric problem (namely, consolidation of health records with real-time access) and include specific messaging protocols. Beyond *TecSec*, the Asserted Claims here should be deemed eligible in view of at least *SRI Int'l, Inc. v. Cisco Systems, Inc.,* 930 F.3d 1295, 1303 (Fed. Cir. 2019) (solving a specific technological problem); *Ancora Techs., Inc. v. HTC America, Inc.,* 908 F.3d 1343, 1345, 1348 (Fed. Cir. 2018) (using unorthodox computer memory storage location); *Data Engine v. Google,* 906 F.3d 999, 1007-1008 (Fed. Cir. 2018) (method of navigating spreadsheets); and *Finjan v. Blue Coat Systems,* 879 F.3d 1299, 1304-05 (Fed. Cir. 2018) (generating specific profile to identify suspicious code).  As in each of those cases, the Asserted Claims here are specifically drawn to improving the functionality of health records management systems by incorporating specific data at the processing stage, and transmitting specific messages containing modified information prior to a healthcare evaluation.

### B.    THE DISTRICT COURT ERRED IN ITS STEP TWO ANALYSIS

The District Court based its erroneous conclusion under Step Two on its misguided view that the Asserted Claims were simply directed to, respectively: (i) "billing insurance companies and organizing patient information;" and (ii) "organizing patient information and communicating with patients."  In the process, the SDFL Court: (i) rejected Defendant's allegations concerning unconventionality, and generally ignored the well-pled statements of fact in the Counterclaims [Appx0197-

A0200 at ¶¶ 10-27]; and (ii) failed to properly assess the Asserted Claims under the machine-or-transformation test.

### C.    THE DISTRICT COURT ERRED IN NOT ALLOWING AMENDMENT

The SDFL Court, indicated that only five months elapsed between the time Defendant filed its Original Counterclaims and the date of filing the Motion for Leave to Amend.  In the meantime, no irreversible actions were taken by either the parties or by the Court, and there would have been zero prejudice in allowing the amendment. Indeed, at one point by stipulation the District Court proceedings were *stayed entirely* pending resolution of the Motion for Judgment.  As such, there was an absence of prejudice, and the interests of justice were only served by permitting the amendment. The District Court's denial of leave was premised primarily on its assessment that an expert declaration was improper to consider on a Motion for Judgment on the Pleadings. But even a cursory review of Defendant's Motion and proposed Amended Counterclaims make clear that the additive material was not restricted to expert opinion; rather, it was presented in the form of statements of fact.  Such are permitted in an amended pleading. It definitely showed additional evidence of patentability that the Court ignored.  But for then the Court to use the evidence it ignored related to patentability to claim Defendant Decapolis had a weak position to make this case exceptional is an abuse of discretion under the totality of the circumstances.  *Realtime Adaptive Streaming LLC*, 113 F.4th at 1354 (citing *Octane Fitness*, 572 U.S. at 554 (court must base its decision on the "totality of the circumstances.").

-30-

## VII. CONCLUSION AND PRAYER FOR RELIEF

The District Court abused its discretion in finding this case exceptional under Section 285 [Appx0001-0017]. As such, the Court should vacate that order and the separate order awarding fees to Epic [Appx0018-0019].

Dated: February 14, 2025

*/s/ Randall Garteiser*
Randall Garteiser
rgarteiser@ghiplaw.com
(415) 568-0553
Christopher A. Honea
chonea@ghiplaw.com
(918) 510-5375
M. Scott Fuller
sfuller@ghiplaw.com
(214) 729-6548
**GARTEISER HONEA PLLC**
119 West Ferguson Street
Tyler, Texas 75702
Main Telephone: (415) 785-3762
Facsimile: (415) 785-3805

*Attorneys for Defendant-Appellant*
DECAPOLIS SYSTEMS LLC

## CERTIFICATE OF COMPLIANCE

This Brief complies with the type-volume limitation of Federal Circuit Rule 32(b).  This Brief contains 6565 words, excluding those portions of the brief exempted by Federal Circuit Rule 32(b)(2).  This Brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 14-point Times New Roman font.

/s/ *Randall Garteiser*
Randall Garteiser

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on February 14, 2025 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system.

/s/ *Randall Garteiser*
Randall Garteiser