No. 2025-1289

# United States Court of Appeals for the Federal Circuit

_____

EPIC SYSTEMS CORPORATION,

*Plaintiff-Appellee,*

*v.*

DECAPOLIS SYSTEMS LLC,

*Defendant-Appellant.*

*Appeal from the United States District Court for the Southern District of Florida in Case No. 9:22-cv-80173, Judge Donald M. Middlebrooks*

## RESPONSE BRIEF OF APPELLEE EPIC SYSTEMS CORPORATION

Kristin Graham Noel
kristin.noel@quarles.com
Matthew J. Duchemin
matthew.duchemin@quarles.com
Bryce A. Loken
bryce.loken@quarles.com
QUARLES & BRADY LLP
33 East Main St., Suite 900
Madison, Wisconsin 53703
Tel. (608) 251-5000
Fax (608) 251-9166

*Counsel for Plaintiff-Appellee, Epic Systems Corporation*

MARCH 26, 2025

## CERTIFICATE OF INTEREST

Pursuant to Federal Circuit Rule 47.4, undersigned counsel for appellee
Epic Systems Corporation certifies the following:

1. **Represented Entities.** The full names of all entities represented by
   undersigned counsel in this case.

   Epic Systems Corporation

2. **Real Party in Interest.** The full names of all real parties in interest for
   the entities. Do not list the real parties if they are the same as the
   entities.

   None.

3. **Parent Corporations and Stockholders.** The full names of all parent
   corporations for the entities and all publicly held companies that own
   10% or more stock in the entities.

   None.

4. **Legal Representatives.** List all law firms, partners, and associates that
   (a) appeared for the entities in the originating court or agency or (b)
   are expected to appear in this court for the entities. Do not include
   those who have already entered an appearance in this court. Fed. Cir.
   R. 47.4(a)(4).

   Kelli A. Edson (Quarles & Brady LLP);
   Martha Jahn Snyder (formerly of Quarles & Brady LLP); and
   Anita Marie Boor (formerly of Quarles & Brady LLP).

5. **Related Cases.** Other than the originating case(s) for this case, are
   there related or prior cases that meet the criteria under Fed. Cir. R.
   47.5(a)?

   Yes.

6. **Organizational Victims and Bankruptcy Cases.** Provide any
   information required under Fed. R. App. P. 26.1(b) (organizational

victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

Not Applicable.


Dated: March 26, 2025                    QUARLES & BRADY LLP

                                         By:  */s/ Matthew J. Duchemin*
                                             Matthew J. Duchemin

                                         *Counsel for Plaintiff-Appellee Epic Systems Corporation*

# TABLE OF CONTENTS

STATEMENT OF RELATED CASES ............................................................ VII

INTRODUCTION ........................................................................................... 1

STATEMENT OF THE CASE AND FACTS ................................................... 3

    A.    Decapolis' Meritless Litigation Campaign Against
           Epic and its Customers ............................................................. 5

    B.    Epic's Rule 12(c) Motion Under 35 U.S.C. §101 ................. 7

    C.    The Federal Circuit Summarily Affirms the Patents'
           Invalidity and District Court's Denial of Decapolis'
           Untimely Motion to Amend the Counterclaim to
           Attach an Expert Report from an Unrelated Litigation ........ 9

    D.    Decapolis' Improper Litigation Conduct Before the
           District Court ...................................................................... 14

    E.    Decapolis' Settlement Strategy Is Further Exceptional
           Conduct ............................................................................... 16

    F.    Decapolis Further Retaliates Against Epic's Customer ...... 18

    G.    The District Court Grants Epic's Motion for
           Attorneys' Fees .................................................................. 20

SUMMARY OF THE ARGUMENT ................................................................ 25

ARGUMENT .................................................................................................. 28

I.    THE DISTRICT COURT'S DECISION TO AWARD FEES
    UNDER 35 U.S.C. §285 IS ENTITLED TO
    SUBSTANTIAL DEFERENCE .................................................. 28

II.    THE DISTRICT COURT DID NOT ABUSE ITS
    DISCRETION BY FINDING THIS CASE EXCEPTIONAL ...... 28

    A.    The District Court Properly Concluded This
           Case Was Exceptional Based In Part On the
           Weakness of Decapolis' Patent Claims Under
           35 U.S.C. §101 .................................................................. 30

           1.    *This Court's §101 jurisprudence is not
                "uncertain"* ................................................. 31

2.      *This Court already affirmed the district court's §101 ruling* ...........................................33

3.      *This Court already affirmed the district court's denial of leave to amend the counterclaims to add the Arrigo Report* .........34

4.      *The Joao and Salwan decisions are indisputably relevant* .......................................35

5.      *Decapolis' unrelated patent application is irrelevant* ........................................................40

6.      *Decapolis' arguments regarding a purported pre-suit investigation are irrelevant to invalidity and belied by the record* ...........................................................41

B.    The District Court Did Not Abuse its Discretion by Finding Decapolis Engaged in Vexatious Litigation Against Epic and Epic's Customers .........44

1.      *The district court properly relied on at least eight instances of vexatious conduct by Decapolis* ...................................................44

2.      *Decapolis' "conjecture" argument is disingenuous* ...................................................49

3.      *Epic's conduct is not at issue, nor does it alter the abuse of discretion analysis* ..............50

4.      *Decapolis cannot account for its extortionist behavior* .......................................53

III.    THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN ITS DETERMINATION OF THE AMOUNT OF ATTORNEYS' FEES ...........................................56

CONCLUSION .................................................................60

# TABLE OF AUTHORITIES

## Cases

*Advanced Magnetic Closures, Inc. v. Rome Fastener Corp.*,
607 F.3d 817 (Fed. Cir. 2010) .......................................................... 55

*Blackbird Tech LLC v. Health In Motion LLC*,
944 F.3d 910 (Fed. Cir. 2019) .................................................. passim

*Brasseler, U.S.A. I, L.P. v. Stryker Sales Corp.*,
267 F.3d 1370 (Fed. Cir. 2001) ...................................................... 44

*Bywaters v. United States*,
670 F.3d 1221 (Fed. Cir. 2012) ...................................................... 57

*ChargePoint, Inc. v. SemaConnect, Inc.*,
920 F.3d 759 (Fed. Cir. 2019) ........................................................ 34

*Comair Rotron, Inc. v. Nippon Densan Corp.*,
49 F.3d 1535 (Fed. Cir. 1995) ........................................................ 40

*Cooperative Ent. Inc. v. Kollective Tech., Inc.*,
50 F.4th 127 (Fed. Cir. 2022) ......................................................... 17

*Credit Acceptance Corp. v. Westlake Servs.*,
859 F.3d 1044 (Fed. Cir. 2017) ...................................................... 34

*Elec. Commc'n Techs., LLC v. ShoppersChoice.com, LLC*,
963 F.3d 1371 (Fed. Cir. 2020) ...................................................... 54

*Elec. Power Grp., LLC v. Alstrom S.A.*,
830 F.3d 1350 (Fed. Cir. 2016) ...................................................... 34

*Energy Heating, LLC v. Heat On-The-Fly, LLC*,
889 F.3d 1291 (Fed. Cir. 2018) ...................................................... 28

*Eon-Net LP v. Flagstar Bancorp*,
653 F.3d 1314 (Fed. Cir. 2011) ................................................. 48, 49

*Ex Parte Joao ("Joao I")*,
No. 2016-003277, 2017 WL 2377811 (P.T.A.B. May 23, 2017) .............. 6, 53

*Ex Parte Joao* ("*Joao II*"),
    No. 2016-002070, 2017 WL 2303383 (P.T.A.B. May 25, 2017) ..... 6, 7, 36, 53

*Fogerty v. Fantasy, Inc.*,
    510 U.S. 517 (1994) ................................................................... 29

*Fox v. Vice*,
    563 U.S. 826 (2011) ................................................................... 57

*Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*,
    572 U.S. 559 (2014) ................................................................... 28

*In re PersonalWeb Techs. LLC*,
    85 F.4th 1148 (Fed. Cir. 2023) ............................................ 28, 48

*In re Rembrandt Techs. LP Pat. Litig.*,
    899 F.3d 1254 (Fed. Cir. 2018) ............................................ 28, 57

*In re Salwan*,
    681 F. App'x 938 (Fed. Cir. 2017) .......................................... 7, 36

*Innovative Therapies, Inc. v. Kinetic Concepts, Inc.*,
    599 F.3d 1377 (Fed. Cir. 2010) ................................................ 52

*Int'l Rectifier Corp. v. IXYS Corp.*,
    515 F.3d 1353 (Fed. Cir. 2008) ................................................ 33

*Inventor Holdings, LLC v. Bed Bath & Beyond, Inc.*,
    876 F.3d 1372 (Fed. Cir. 2017) .......................................... passim

*Joao Bock Transaction Sys., LLC v. Jack Henry & Assocs., Inc.*,
    No. CV 12-1138, 2016 WL 1267159 (D. Del. Mar. 31, 2016),
    *aff'd*, 714 F. App'x 1019 (Fed. Cir. Mar. 13, 2018) ................ 40, 50

*Katz v. Lear Siegler, Inc.*,
    909 F.2d 1459 (Fed. Cir. 1990) ................................................ 55

*Lumen View Tech. LLC v. Findthebest.com, Inc.*,
    811 F.3d 479 (Fed. Cir. 2016) ...................................... 46, 47, 56, 58

*Mathis v. Spears*,
    857 F.2d 749 (Fed. Cir. 1988) ................................................ 56

*Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.*,
  No. 08-04567, 2012 WL 161212 (N.D. Cal. Jan. 17, 2012),
  *aff'd*, 726 F.3d 1359 (Fed. Cir. 2013) ............................................................ 44

*Novartis AG v. Torrent Pharms. Ltd.*,
  853 F.3d 1316 (Fed. Cir. 2017) ....................................................... 41

*Octane Fitness, LLC v. Icon Health & Fitness, Inc.*,
  572 U.S. 545 (2014) ......................................................... 29

*Perdue v. Kenny A. ex rel. Winn*,
  559 U.S. 542 (2010) ......................................................... 57

*Phil-Insul Corp. v. Airlite Plastics Co.*,
  854 F.3d 1344 (Fed. Cir. 2017) ................................................ 35, 39, 59

*Prager v. El Paso Nat'l Bank*,
  417 F.2d 1111 (5th Cir. 1969) ........................................... 19

*Realtime Adaptive Streaming LLC v. Sling TV, LLC*,
  113 F.4th 1348 (Fed. Cir. 2024) ........................................ 36, 37

*Rothschild Connected Devices Innovations, LLC v. Guardian Prot. Servs., Inc.*,
  858 F.3d 1383 (Fed. Cir. 2017) ...................................... 30, 49, 54

*SFA Systems, LLC v. Newegg Inc.*,
  793 F.3d 1344 (Fed. Cir. 2017) ....................................................... 54

*Soverain Software LLC v. Victoria's Secret Direct Brand Mgmt., LLC*,
  778 F.3d 1311 (Fed. Cir. 2015) .................................................. 33, 39

*Symbology Innovations, LLC v. Valve Corporation et. al.*,
  No. 2:23-cv-00419-JRG, Dkt. 110 (E.D. Tex. Jan. 31, 2025) ...................... 45

*Taurus IP, LLC v. DaimlerChrysler Corp.*,
  726 F.3d 1306 (Fed. Cir. 2013) ....................................................... 28

*Therasense, Inc. v. Becton, Dickinson & Co.*,
  745 F.3d 513 (Fed. Cir. 2014) ....................................................... 56

*Trinity Info Media, LLC v. Covalent, Inc.*
  72 F.4th 1355 (Fed. Cir. 2023) ....................................................... 34

v

*Uniloc USA, Inc. v. Motorola Mobility LLC*,
   52 F.4th 1340 (Fed. Cir. 2022) ................................................... 19, 48

*WPEM, LLC v. SOTI Inc.*,
   No. 2:18-CV-00156-JRG, 2020 WL 555545 (E.D. Tex. Feb. 4, 2020),
   *aff'd*, 837 F. App'x 773 (Fed. Cir. 2020) ....................................... 42

**Statutes**

35 U.S.C. § 121 ............................................................................... 41

**Regulations**

37 C.F.R. § 1.141 ............................................................................ 41

## **STATEMENT OF RELATED CASES**

Epic identifies the following related or prior cases pursuant to Fed. Cir. R. 47.5(b)(1):

- *Epic Systems Corporation v. Decapolis Systems, LLC*, No. 2023-1302 (Fed. Cir.)

- *Decapolis Systems, LLC v. UT Southwestern Health Systems and CHRISTUS Health*, No. 2:22-cv-00159 (E.D. Tex.)

- *Decapolis Systems, LLC v. Bexar County Hospital District d/b/a University Health*, No. 6:21-cv-01252 (W.D. Tex.)

- *Decapolis Systems, LLC v. Central Texas Community Health Centers d/b/a CommUnityCare*, No. 6:21-cv-01262 (W.D. Tex.)

# **INTRODUCTION**

Decapolis is a non-practicing entity and serial litigant that used form complaints to extract nuisance value settlements from its targets. When Epic refused to acquiesce to Decapolis' settlement demands, Decapolis started suing Epic's customers to create leverage. Contrary to Decapolis' expectation, Epic refused to back down, instead invalidating both Patents, successfully arguing for affirmance of the Patents' invalidity before this Court, and, germane to this Appeal, securing $634,457.23 under 35 U.S.C. §285 for its attorneys' fees given Decapolis' meritless claims and "dilatory, if not fully spurious," litigation conduct.

Decapolis' Asserted Patents—U.S. Patent No. 7,464,040 ("the '040 Patent") and U.S. Patent No. 7,490,048 ("the '048 Patent")—are directed to the idea of processing requests to access and change patient information and generating and transmitting messages in connection with that process. As the district court held, and this Court summarily affirmed, these are quintessential abstract concepts—and not new ones. People have been sending and receiving information, requesting access to information, and generating messages based on that information for eons, and doing so "in real-time" by conventional computing adds nothing inventive. Contrary to one of Decapolis' central claims in this appeal, §101 law is well-settled in this regard, as the Court repeatedly stated during oral argument on the merits. Decapolis knew, or should have known, this because its sole member (a patent attorney and inventor)

previously attempted and failed to patent the same subject matter when the Patent Trial and Appeal Board rejected the claims under §101 citing similar precedent from this Court.

Without regard for this well-settled jurisprudence, Decapolis engaged in a vexatious litigation campaign against Epic and its customers across multiple district courts. As the district court concluded, not only were Decapolis' claims against Epic and its customers wholly without merit, Decapolis' litigation conduct was dilatory, "if not fully spurious." The court found that either ground supported finding this case exceptional under §285. Ultimately, the court held, based on the totality of circumstances, including the need to deter future meritless lawsuits, that this case is exceptional and Epic is entitled to its attorneys' fees totaling $634,457.23 for both the district court litigation and appeal.[1]

Decapolis now puts forth equally meritless arguments as to why the district court's finding of exceptionality should be overturned. Rather than apply the correct abuse of discretion standard, Decapolis essentially argues for *de novo* review of the district court's decision. Decapolis fails to identify a single legal error or clearly erroneous factual finding in applying the *Octane Fitness* analysis. Rather, Decapolis

---

[1] The amount sought, and ultimately awarded, were for Epic's fees and costs incurred in the S.D. of Florida proceedings with Decapolis (and the appeal therefrom), not those incurred in the customer cases. (Appx4016, fn.2 (citing Appx3419); Appx2220-2222).

principally argues, as it did in the §101 merits appeal, that it had a good faith *infringement* case (both incorrect, and irrelevant to the issue of whether it had a good faith validity case or otherwise conducted vexatious litigation tactics). In fact, Decapolis goes further to expressly argue that the district court *erred* in finding the Patents invalid under §101 – a decision this Court already affirmed.

Worse yet, as to the amount of fees awarded (the second issue on appeal), Decapolis does not even identify the standard that the district court should have applied to award fees. Indeed, Decapolis does not discuss a single legal precedent for its contention that the district court erred in determining the amount awarded. Nor does Decapolis address the record evidence that Epic submitted to the district court (either fact or expert), or justify the fact that Decapolis failed to rebut that evidence with its own. Rather, Decapolis relies on hyperbolic attorney argument and unsupported factual assertions.

In short, Decapolis' appeal not only fails to demonstrate how the district court abused its discretion, it lacks basic merit. Epic respectfully requests this Court affirm the district court's rulings that this case is exceptional and that Epic is entitled to $634,457.23 in attorneys' fees.

## STATEMENT OF THE CASE AND FACTS

This is the second appeal filed by Defendant-Appellant Decapolis Systems, LLC and concerns only the finding of exceptionality under 35 U.S.C. §285, and the

amount of fees awarded to Plaintiff-Appellee Epic Systems Corporation. This appeal arises from a lawsuit Epic filed against Decapolis seeking a declaratory judgment of non-infringement and invalidity of the Asserted Patents. Epic filed the declaratory judgment action against Decapolis in the Southern District of Florida, Decapolis' hometown, after the non-practicing entity began a campaign of baseless lawsuits against Epic and its customers in the Western District of Texas. Ultimately, Decapolis sued at least 40 defendants, with only Epic and its customers refusing to settle. (Appx2536; Appx3521-3524). Additionally, Decapolis' sister-entity GreatGigz has targeted dozens of companies, including an Epic customer in Texas. (Appx3405 (citing *GreatGigz Sols., LLC v. CHRISTUS Health*, No. 6:21-cv-01310 (W.D. Tex. Dec. 16, 2021))); (Appx3525-3528).[2]

The district court held both of the Patents invalid under §101, explaining that "the Patents address problems with keeping patient's records on paper by moving said record keeping" onto a computer and that "[Decapolis'] Patents do not claim any improvement in the hardware of computers" because "[s]imply using a computer to implement a process does not make a Patent 'concrete.'" (Appx3393-3394). On April 4, 2024, this Court summarily affirmed the district court's order invalidating

---

[2] Epic filed a declaratory judgment action against GreatGigz in the Southern District of Florida, which has been stayed pending Epic's motion for judgment on the pleadings. *Epic Sys. Corp. v. GreatGigz Sols., LLC*, No. 9:22-cv-80276, Dkt. 1 (S.D. Fla. Feb. 18, 2022); *Id.*, Dkt. 41 (Aug. 18, 2022).

the Asserted Patents under §101. *Epic Sys. Corp. v. Decapolis Sys. LLC*, No. 23-1302 (Fed. Cir.) ("23-1302"), Dkt. 41.

## A. Decapolis' Meritless Litigation Campaign Against Epic and its Customers

Decapolis initially sued Epic in the Western District of Texas, alleging infringement of the Asserted Patents. (Appx3405 (citing *Decapolis Sys., LLC v. Epic Sys. Corp.*, No. 6:21-cv-00434, Dkt. 1 (W.D. Tex. Apr. 29, 2021)). Epic filed a motion to dismiss for improper venue. (*Id.* (citing *id.*, Dkt. 10)). A simple pre-suit investigation should have confirmed that Epic is a Wisconsin corporation with its principal place of business in Verona, Wisconsin and no facilities in Texas. (*Id.* (citing *id.*, Dkt. 10); Appx0442). Instead of responding to the motion, Decapolis filed an amended complaint, without leave of court and in violation of the district court's local rules. (Appx3405 (citing *id.*, Dkt. 23)). After the district court struck the improper pleading and ordered Decapolis to respond to Epic's motion to dismiss, Decapolis initiated lawsuits against two of Epic's customers in the W.D. of Texas, alleging their use of Epic's software infringed the same patents.[3] Decapolis then voluntarily dismissed the Epic case without prejudice. (*Id.* (citing *id.*, Dkt. 24)).

To consolidate the dispute and protect all of its customers, Epic brought the

---

[3] *Decapolis Sys., LLC v. Bexar Cnty. Hosp. Dist.*, No. 6:21-cv-01252, Dkt. 1 (W.D. Tex. Dec. 1, 2021); *Decapolis Sys., LLC v. Cent. Tex. Cmty. Health Ctrs.*, No. 6:21-cv-01262, Dkt. 1 (W.D. Tex. Dec. 3, 2021).

underlying declaratory judgment action in Decapolis' home jurisdiction, the Southern District of Florida. (Appx2458). After trying to avoid service of the complaint (Appx0006), Decapolis filed its answer and counterclaims, asserting Epic infringed the Asserted Patents. (Appx2467). Thereafter, Decapolis filed another lawsuit against two Epic customers in the E.D. of Texas, asserting Epic's software infringed the same Patents.[4]

As the district court later concluded, Decapolis, and its sole member and named inventor Raymond Joao, knew or should have known, prior to starting its litigation campaign, that its Patents would not survive a §101 challenge after the Supreme Court's *Alice* decision and this Court's jurisprudence finding similar patents ineligible under §101. (Appx0010-0011). In particular, in 2017, the Patent Trial and Appeal Board ("PTAB") considered near-identical claims as those asserted here, from the same named inventor, and concluded they were abstract. (*Id.* (citing *Ex Parte Joao* ("*Joao I*"), No. 2016-003277, 2017 WL 2377811, at *3 (P.T.A.B. May 23, 2017); *Ex Parte Joao* ("*Joao II*"), No. 2016-002070, 2017 WL 2303383, at *4 (P.T.A.B. May 25, 2017)). For example, in *Joao II*, Mr. Joao had filed a patent application as a continuation-in-part of both the Asserted Patents, claiming the same subject matter as the Asserted Patents (U.S. App. No. 12/589,294 ("the '294

---

[4] *Decapolis Sys., LLC v. UT Southwestern Health Sys. and CHRISTUS Health*, No. 2:22-cv-00159, Dkt. 1 (E.D. Tex. May 17, 2022).

Application")). (Appx2552-2553; Appx2558). As the district court noted, and unrebutted claim charts demonstrated, the '294 Application was largely identical to the Asserted '040 Patent.[5] (Appx3392-3393). In rejecting the '294 claims under §101, the PTAB concluded "[t]he claims presented here are similar in that regard to those found by the Board, and affirmed by the Federal Circuit, to be directed to the 'abstract idea of billing insurance companies and organizing patient health information.'" *Joao II*, 2017 WL 2303383 at *4 (*citing In re Salwan*, 681 F. App'x 938, 941 (Fed. Cir. 2017)).

## B.    Epic's Rule 12(c) Motion Under 35 U.S.C. §101

On May 20, 2022, Epic moved for judgment on the pleadings under Rule 12(c), arguing that the Asserted Patents were patent-ineligible under 35 U.S.C. § 101. (Appx2538; Appx2543-2544). Briefing was complete on June 9, 2022. (Appx3038). Starting two months later, Decapolis attempted to manufacture an issue of fact by repeatedly seeking to introduce an expert report that Decapolis obtained months prior for a separate set of lawsuits not involving Epic (the "Arrigo Report").

---

[5] In connection with its Rule 12(c) Motion, Epic submitted two claim charts that compared (i) the representative claim in *Joao I* to claim 2 of the '048 Patent (Appx2582) and (ii) the representative claim in *Joao II* to claim 1 of the '040 Patent (Appx2579-2580). The claim charts illustrated the direct overlap in language between *Joao I* and *Joao II* and the Asserted Patents. (Appx2552-2553; Appx2558). Decapolis did not rebut these claims charts before the district court or this Court during the prior appeal or §285 Motion.

(Appx3056-3057); 23-1302, Dkt. 15 at 13-15).[6] The district court denied Decapolis'

multiple attempts, which this Court affirmed during Decapolis' prior appeal.

(Appx2535-2537; 23-1302, Dkt. 12 at 28-30; *Id.*, Dkt. 15 at 56-61).

On December 1, 2022, the district court granted Epic's Rule 12(c) motion,

holding the Asserted Patents patent-ineligible under §101. (Appx3384-3396). The

district court held that under *Alice* step-one, the '040 Patent is directed to "the

abstract idea of billing insurance companies and organizing patient information,"

and that the '048 Patent is directed to "organizing patient information and

communicating with patients." (Appx3394). Under *Alice* step-two, the district court

held that both Patents fail to recite an inventive concept because they only claim the

use of conventional computers. (Appx3395-3396).

The district court held no factual allegations prevented determining patent

eligibility under §101. Decapolis' claimed technological improvements "[do] not

preclude this Court's ability to examine the Patents' eligibility under §101 because

the alleged improvements, viewed in light of the Specifications and Claims [], are

nonetheless ineligible under §101." (Appx3389-3392).

---

[6] The district court did not consider Decapolis' inappropriate attempts to introduce the Arrigo Report in its §285 decision. (Appx2200, fn.4). Epic includes the facts around the Arrigo Report because Decapolis makes two arguments regarding the Report's exclusion in the present Appeal. (*See* Decapolis' Opening Brief, Dkt. 12 ("Br.") at 13, 30).

The district court addressed Decapolis' attempts to introduce the Arrigo Report into the record. (Appx3389). The district court referred to its lengthy explanation of why it denied the motion, and further held that "[Decapolis'] proposed expert report would not have precluded this Court's ability to examine the Patents' eligibility under §101 because it does not raise any plausible factual disputes after drawing all reasonable inferences in favor of [Decapolis]." (Appx3389; *see contra* 23-1302, Dkt. 12 at 29-30).

Decapolis appealed the district court's orders on December 7, 2022. (Appx3397).

### C. The Federal Circuit Summarily Affirms the Patents' Invalidity and District Court's Denial of Decapolis' Untimely Motion to Amend the Counterclaim to Attach an Expert Report from an Unrelated Litigation

In its first appeal, Decapolis appealed the district court's §101 invalidity finding, and the refusal to grant Decapolis leave to file an amended counterclaim attaching the Arrigo Report. Decapolis did not appeal the court's denial of its motion for leave to file a surreply on the Rule 12 motion to introduce the Arrigo Report, thus waiving same. (23-1302, Dkt. 12 at 3).

As to patent eligibility, Decapolis argued the Asserted Patents were not directed to an abstract idea because they were directed to technological improvements as they "provide[d] a means by which healthcare professionals and patients can readily modify and obtain patient health data at the time of treatment."

(*Id.* at 15). However, as Epic argued, Decapolis failed to point to any specific rules or technical details, opting to instead describe the system and methods in purely functional terms. (23-1302, Dkt. 15 at 35-40). The Asserted Patents were directed to overcoming certain problems with healthcare that were rooted in paper-based health records by adopting conventional computer components. (*Id.* at 29-30).

Under *Alice* step-two, Decapolis argued the Patents disclosed an inventive concept, but failed to cite evidentiary support. In particular, Decapolis posited the claims capture "unconventional technological improvements," such as a processor "unconventionally assess[ing] credentials" and a transmitter "unconventionally communicat[ing] with a patient communication device." (23-1302, Dkt. 12 at 24-26). Yet, beyond inserting the word "unconventionally," Decapolis merely recited the problems identified by the Patents; and, like the Patents, Decapolis identified an abstract idea on a set of generic computer components without identifying any inventive concepts or improvements.

On April 2, 2024, this Court held oral argument (Appx2152-2174), during which time the Panel repeatedly invited Decapolis to explain why the Patents were not plainly invalid under the Court's §101 jurisprudence. For example:

> JUDGE PROST:    Well, you started off by saying this case has a familiar note, and I would agree with that. And one of the things that seems familiar to me is we've had a number of years of jurisprudence on 101.

And while people have complained that the standards and the words like "abstract" are ambiguous, we've got a lot of data points in our cases.

And you can tell me why I'm wrong, but it seems to me that the limitations and the claims here trace very closely to the kinds of things we've been issuing and affirming 12(b)(6)'s on, the kind of information sharing and all of that stuff. This seems to be in that bucket.

(Appx2155 at 4:9-23).

JUDGE CHEN:     [W]e've said many times that automating some type of method of organizing human activity, yes, maybe things can be faster; yes, maybe things can be more accurate because you erase human error from the equation. But nevertheless, that's still just doing an abstract idea on a computer, on generic components, just transferring data back and forth. And we've said that many, many times.

I mean, we've got the University of Florida case versus GE. You're aware of that. We have a non-prec case called in re Saulman (sp) that looks really, really close to this case. It's non-prec, but nevertheless, I think it is – there's nothing in that opinion that's inaccurate.

And so when I look at your claims here, just the fact that there are some advantages to automation of doing manual processes is something time and again we've said alone is not an inventive concept or is not something that makes an otherwise abstract idea a non-abstract idea.

So what else do you have for us?

(Appx2158-2159 at 7:7-8:6).[7]

---

[7] As the undersigned was present in the courtroom, Epic respectfully suggests that the transcription reference to "in re Saulman" was to *In re Salwan*, a decision also

Decapolis' responses to the Court's various questions highlight the overall lack of merit to Decapolis' claims and prior appeal:

MR. FULLER:     Well, with regard to that, Your Honor, the pen-and-paper analogy fails here because the claims specifically require the real-time transmission from the physician records to the person of the patient.

And so that did not --.

JUDGE CHEN:     But we've said before, this notion of real-time -- you know, because thanks to computers and computer networks "We can make things faster" is of no moment.

That's just something that's part and parcel that comes with putting something on a computer, putting something on a computer network.

So the end result or consequence that some information is getting to a person faster than it could otherwise if just done merely manually, again, is not good enough.

So what else do you have for us?

MR. FULLER:     Well, even if we accept the fact that if there is an abstract idea, there's still the step two analysis, which the district court failed to properly conduct. [. . .]

These facts come directly from the specification itself. And the specification makes clear that at the time the state of the art was such that the way in which healthcare records were collected was deficient.

The doctors at the time would take questionnaires from patients at the time. These are necessarily incomplete and inconsistent.

---

cited by the district court and the parties' briefs. (Appx3392; 23-1302, Dkt. 12 at 16-17; 23-1302, Dkt. 15 at 40-41).

So the solution that is advanced overcame the deficiencies in the state of the art, as expressed in the specification, in the form of this real-time transfer of the data directly to --.

JUDGE CHEN:    Did you just say that the real-time transmission, which is an abstract idea, is also the technological improvement?

MR. FULLER:    The technological improvement is the modification of the typical paradigm by which physicians collected information from patients.

Now, instead of collecting from a patient's memory on a form, the patient has a complete, accurate, up-to-date, up-to-the-minute record to share. And it takes away the inaccuracies and the inefficiencies of the prior systems.

JUDGE CHEN:    [E]ven if that were all true, I don't see that in the claim, this notion of what you – whatever you just described.

The claims are very broad. They're just about, you know, collecting information, processing information, transmitting information, dating information [. . .] But what you just described is maybe an embodiment encompassed by the claims, but the claims themselves don't recite what you just said.

(Appx2159-2162 at 8:7-11:6). After hearing Decapolis' arguments, Judge Chen twice, *sua sponte*, inquired if a motion for attorneys' fees was pending at the district court. (Appx2167-2168 at 16:24-17:3 (question to counsel for Decapolis); Appx2173-2174 at 22:25-23:2 (question to counsel for Epic)).

Decapolis' counsel fared no better in explaining how the district court allegedly abused its discretion in denying Decapolis' motion for leave to amend the counterclaims to add the Arrigo Report. For example, when pressed about the

13

scheduling order and why Decapolis waited months until after the deadline to seek to amend, Decapolis simply responded "a lot of things could have been done differently" and "there was no dilatory motive." (Appx2166-2167 at 15:8-16:18).

Two days later, on April 4, 2024, the Court summarily affirmed the district court's invalidity and motion for leave orders. (23-1302, Dkt. 41).

### D.    Decapolis' Improper Litigation Conduct Before the District Court

Prior to, and even after, the district court's order invalidating the Asserted Patents, Decapolis engaged in improper litigation conduct worthy of finding the case exceptional. For example, after Epic filed its Rule 12(c) motion, Decapolis initially offered a stay pending the motion, but withdrew that offer without explanation after Epic declined a settlement offer and sought to stay the Texas cases against Epic's customers. (Appx2729-2730; Appx2741-2745). In a 180-degree pivot, Decapolis instead demanded Epic immediately produce its most sensitive information—source code, technical documents, and financials. (Appx2737, ¶ 3; Appx2741-2745).

On May 31, 2022, Epic agreed to make its source code available for inspection by June 20, 2022. (Appx4010; Appx4024).[8]

---

[8] Decapolis omits this fact in its false description of Epic and its discovery efforts. (*See* Br. at 18-19). Decapolis also omits that the district court stayed discovery prior to Epic's agreed date to produce the source code and that most of its cited instances of Epic "refusing to produce its code" were during the court's stay order. (*Id.*)

On June 3, 2022, based on the Eleventh Circuit's strong precedent for staying discovery pending a dispositive motion to dismiss, Epic filed an opposed motion to stay. (Appx2726). After forcing Epic to incur the cost of briefing, Decapolis filed a "Non-Opposition" notice. (Appx2509). On June 14, 2022, before Epic's promised date to produce its source code, the district court stayed the action pending resolution of Epic's Rule 12(c) Motion. (Appx3054-3055). Meanwhile, Decapolis refused to stay the customer suits pending resolution of Epic's declaratory judgment action. (Appx3406 (citing *UT Southwestern*, No. 2:22-cv-00159, Dkts. 21, 26, 31)).

Before the Florida district court granted the stay, the parties exchanged discovery and claim construction positions. (Appx3406). Decapolis failed to comply with its discovery obligations, forcing Epic to file a motion to compel Decapolis to (a) cure deficiencies in in its preliminary infringement contentions, (b) supplement its responses to Epic's interrogatories, and (c) produce the documents requested by Epic. (Appx2754-2771).[9] Epic's motion outlined Decapolis' tactics to hinder Epic's ability to litigate the case and obfuscate discovery into Decapolis' claims or pre-suit investigation. (*Id.*). Epic's motion was ultimately mooted by the court's order granting Epic's motion to stay. (Appx3055).

---

[9] Decapolis' repeated suggestion that Epic did not challenge its infringement claims (*see, e.g.*, Br. at 16, 20) misstates the record. (Appx2759-2761).

Decapolis engaged in a litany of other misconduct that was presented to the court on Epic's motion for attorneys' fees. (Appx3405-3407; Appx4015-4016). As the district court noted, "[s]uch conduct ranges from obfuscating discovery, filing meritless motions for claim construction, requesting to introduce irrelevant 'expert' opinions, and disclosing Plaintiff's confidential, proprietary and trade secret information to Defendant's owner, Mr. Joao." (Appx2200, fn.4). However, the court stated that its "decision to classify this case as 'exceptional' does not rely upon these allegations." (*Id.*).

### E.    Decapolis' Settlement Strategy Is Further Exceptional Conduct

Throughout Decapolis' litigation campaign against Epic and its customers, Decapolis aggressively pursued nuisance settlements. Epic offered the district court unrebutted evidence of Decapolis' settlement offers that drastically decreased over the course of a week, each of which were significantly less than the total cost of patent litigation with the final offer amounting to $0, before Decapolis completely pulled settlement off the table. (Appx0012; Appx4000-4001). Decapolis became increasingly frustrated that Epic did not accept Decapolis' nuisance value settlement offers. First, in May of 2022, Decapolis offered to settle its claims against Epic and its customers but did not provide an amount. (Appx3530-3531). Epic did not engage in a discussion about that offer. (*Id.*).

On September 19, 2022, after most defendants had settled—and months after Epic filed its Rule 12(c) motion, the district court granted the stay, and the W.D. of Texas cases were stayed—Decapolis offered a nuisance value amount to settle all pending disputes involving both the Asserted Patents and the patents owned by GreatGigz.[10] (Appx3407-3408; Appx3536-3537; Appx3503, ¶ 3). The next day, before Epic responded, Decapolis reduced its demand by 25%. (Appx3407-3408; Appx3503, ¶ 3). Without further discussion, on September 23, 2022, Decapolis offered Epic a walk away on the Decapolis and GreatGigz cases and patents. (Appx3503, ¶ 5; Appx4000-4001). On September 27, 2022, while seeking leave to amend to add the Arrigo Report, Decapolis reiterated its offer to Epic. (Appx3533-3537). On September 29, 2022, Decapolis informed Epic that all settlement offers were off the table in light of this Court's decision in *Cooperative Ent. Inc. v. Kollective Tech., Inc.*, 50 F.4th 127 (Fed. Cir. 2022). (Appx3533; Appx3408).

Then, months after the district court stayed discovery, Decapolis served a subpoena on Epic in the CHRISTUS Health customer case and demanded that Epic or CHRISTUS produce Epic's most sensitive source code. (Appx3409-3410). During a December 1, 2022 meet and confer, Decapolis used that demand as a pressure point to leverage a settlement, again offering Epic and its customers the

---

[10] The monetary amounts offered by Decapolis to settle the cases against Epic and its customers were redacted from the district court filings at Decapolis' request. (Appx2204, fn.5; Appx3989-3998; Appx4000-4005).

prior walk away offer for both the Decapolis and GreatGigz cases, stating Epic would avoid its code being produced should the settlement be accepted. (*Id.*; Appx4000-4001; Appx3507-3508, ¶ 11; Appx3598-3602).

### F.     Decapolis Further Retaliates Against Epic's Customer

Decapolis also retaliated against Epic by targeting its customer. *First*, as noted, after Epic filed its declaratory judgment action, Decapolis retaliated by suing yet another Epic customer, CHRISTUS Health, as well as UT Southwestern Health Systems, in the E.D. of Texas. (Appx3408-3409 (citing *UT Southwestern*, No. 2:22-cv-00159, Dkt. 1 (E.D. Tex. May 17, 2022))). Decapolis named "UT Southwestern Health Systems", but that entity never used Epic's accused software. (Appx3408 (citing *Id.*, Dkt. 20, at 1-3)). Decapolis was informed that it named an improper party, and that the proper party had sovereign immunity. (*Id.*). Decapolis initially refused to dismiss the improper party and acquiesced only after forcing UT Southwestern to file and brief a motion. (*Id.*).

*Second*, despite the well-established precedent of courts staying patent litigation under the customer-suit exception, including the W.D. of Texas staying Decapolis' suits against Epic's other customers, Decapolis refused to entertain CHRISTUS' request for a stay pending resolution of Epic's declaratory judgment action. (Appx3409 (citing *Id.*, Dkt. 26)). CHRISTUS was forced to brief a motion to stay. (Appx3409 (citing *Id.*, Dkt. 21)). Decapolis filed a one-page response opposing

the motion, misrepresenting to the Texas court that CHRISTUS had its own—non-Epic—EHR software and systems (MyCHRISTUS). (Appx3409 (citing *Id.*, Dkt. 31, at 1-4)). The sole piece of evidence Decapolis cited facially demonstrated MyCHRISTUS was Epic's software; the evidence from Decapolis even referenced Epic and the URL for Epic's software. (*Id.*).

*Third*, to further harass Epic and get around the Florida district court's stay order, Decapolis subpoenaed Epic, using the CHRISTUS lawsuit as cover, serving dozens of overly broad and unduly burdensome requests seeking the same documents Decapolis was seeking from Epic before the Florida action was stayed—i.e., Epic's source code, technical documents, and financials. (Appx3409; Appx3587-3596). Following Epic's written response to Decapolis' subpoena, Decapolis intensified its demands on CHRISTUS, including demanding CHRISTUS immediately produce Epic's source code and related documents despite CHRISTUS' pending motion to stay. (Appx3409; Appx3507, ¶ 9).

*Finally*, even after the Florida court invalidated the Patents, Decapolis refused to dismiss the CHRISTUS litigation, despite controlling authority confirming the immediate preclusive effect of the court's judgment, even pending appeal.[11] Instead, Decapolis persisted with its vexatious conduct. (Appx3408-3410; Appx3598-3603).

---

[11] *Uniloc USA, Inc. v. Motorola Mobility LLC*, 52 F.4th 1340, 1347 (Fed. Cir. 2022); *Prager v. El Paso Nat'l Bank*, 417 F.2d 1111, 1112 (5th Cir. 1969).

**G.    The District Court Grants Epic's Motion for Attorneys' Fees**

On January 30, 2023, Epic filed its motion for attorneys' fees under §285 seeking a total of $405,281.08 in fees associated with Epic's involvement in the Florida action. (Appx3422). Briefing was complete on March 7, 2023. (Appx4008). The district court did not resolve Epic's motion for attorneys' fees until after this Court's April 4, 2024 summary affirmance. (Appx0018-0019; 23-1302, Dkt. 41).

On May 2, 2024, following this Court's summary affirmance, Epic moved to supplement its motion for attorneys' fees to include the fees incurred in connection with Decapolis' unsuccessful appeal—totaling $305,568.20. (Appx2090-2094). Decapolis initially did not oppose Epic's request to supplement. (Appx2095). However, in keeping with its conduct, Decapolis waited until after the deadline to respond, and on May 24, 2024, filed a motion for leave to file an opposition to Epic's motion for leave to supplement. (Appx4085-4086). On May 30, 2024, the court permitted Decapolis to file its opposition. (Appx4096-4097). On June 7, 2024, Epic filed its reply in support of its motion to supplement. (Appx2183-2189).

On July 30, 2024, the district court granted Epic's motion for attorneys' fees and ordered the parties to meet and confer regarding the amount that should be awarded—noting it would not award Epic the entirety of the fees it requested for the appeal. (Appx0016). In reaching its decision, the district court considered (i) the meritless arguments Decapolis continued to propound; (ii) the lack of support in the

20

case law or the Patents for Decapolis' arguments; (iii) Decapolis' dilatory, if not

fully spurious, conduct against Epic and its customers; (iv) Decapolis' extortionist

settlement offers to Epic; (v) Decapolis' quick settlements with other parties; (vi)

Decapolis' continued targeting of Epic's customers, despite the district court's final

judgment, forcing Epic to incur substantial and unnecessary expenses; and (vii) the

need to deter future conduct. (Appx0009-0016). The court stated "the appeal in this

case is quite remarkable and underscores the relative weakness of [Decapolis']

position on the merits." (Appx0010). The court reviewed the transcript of the hearing

and observed:

> I cannot find a single precise answer from Defense counsel when pressed
> on the technical improvement that the claims in this case were directed
> toward. Rather, counsel for Defendant merely repeated throughout oral
> argument that the inventions in this case speed up the process of
> conveying patient information in the healthcare context, albeit speeding
> up information that is likely to be more accurate precisely because of the
> quick rate of processing. It is telling that Judge Chen, after emphasizing
> throughout the duration of the argument that mere automation is not
> enough for patentability under § 101, inquires of counsel, "Is there a
> motion for attorneys' fees that's been filed below?"

(Appx0010-0011 (internal citation omitted)). The court further held that

"[Decapolis] has apparently continuously propounded meritless arguments against

both [Epic] and its customers despite its substantively weak position and arguments

as well as consistently attempted to exploit its status as a patent holder to extract

settlements from third parties. An award of attorney's fees will deter such conduct

in the future." (Appx0015).

On August 9, 2024, after meeting and conferring with Decapolis, Epic filed its supplemental motion for attorneys' fees seeking a total of $665,014.05 under §285. (Appx2209-2211). Epic reduced the attorneys' fees it sought in connection with defending Decapolis' appeal by 15%, down to $259,732.97 total. (Appx2214-2215). Epic maintained its request for $405,281.08 for fees incurred in connection with the district court action. (Appx2213-2214). Epic's supplemental motion provided (i) a detailed summary of the timekeepers' expertise and skill in patent litigation (Appx2212-2213); (ii) the timekeepers' rates and total hours included (Appx2214-2215); (iii) the descriptions of tasks performed by the timekeepers (Appx2215-2216); (iv) detailed explanation of the reasonableness of attorneys' fees sought using the lodestar method (Appx2217-2223); (v) excerpts of the 2023 Report of the Economic Survey by the American Intellectual Property Law Association ("AIPLA") regarding average rates and fees incurred in patent litigation (Appx2220; Appx2379-2384); and (vi) the declaration of Attorney David S. Brafman with the law firm Akerman, LLP, who opined that the fees sought were reasonable (Appx2217-2220; Appx2356-2362).

In its September 5, 2024 response—filed two weeks late and without leave (Appx0019)—Decapolis argued Epic's entire collection of attorneys' fees, for both the district court litigation and the appeal, should be capped at a maximum of $50,000. (Appx2386; Appx2390). Decapolis' only offered logic for the cap was

22

"based on [Epic's] clear over-staffing and overall litigation strategy." (*Id.*). Alternatively, Decapolis demanded the court remove all discovery related fees, limit the appeal fees to two timekeepers, and then apply a 25% reduction across the remaining fees. (Appx2389-2392). Decapolis did not depose Mr. Brafman nor rebut his testimony, provide any third-party opinion regarding reasonableness, challenge the timekeepers' rates, or rebut the AIPLA data. (Appx2400-2403; Appx2218).

In its September 12, 2024 reply, Epic responded to Decapolis' claims. (Appx2399-2407). Epic noted that Decapolis' position was belied by the AIPLA data, as well as Decapolis' own then-recent position that Decapolis should be entitled to $40,000 in attorneys' fees to draft a response brief in opposition to a motion in one of the Epic customer cases (a motion that Decapolis did not win). (Appx2400; Appx2403-2404 (citing *UT Southwestern*, No. 2:22-cv-00159, Dkt. 85, at 1 fn.2 (E.D. Tex. July 30, 2024))). Epic addressed why Decapolis' proposed $50,000 limit was unreasonable given Epic's unrebutted evidence. (Appx2401-2403). Epic clarified that it was entitled to its discovery fees because Decapolis, not Epic, refused to provide responsive and relevant discovery—unnecessarily increasing discovery costs (Appx2404-2405)—and Decapolis, not Epic, refused to stay discovery pending Epic's Rule 12(c) motion (*id.*). Finally, Epic responded to Decapolis' scattershot arguments allegedly supporting its blanket reduction in fees, such as a generic reduction for "the COVID pandemic," for a theoretic loss of

efficiency due to attorney departures during the litigation, and a fabricated bar to recovering paralegal time. (Appx2405-2407).[12]

On November 25, 2024, the district court issued its order on Epic's supplemental motion, awarding Epic (a) $405,281.08 for the district court litigation and (b) $229,176.15 for the appeal, for a total award of $634,457.23. (Appx0018-0019). The court considered the parties' submissions and noted Decapolis' failure to comply with the court's instruction to object with reasonable particularity to each time entry it was challenging. (Appx0019). The court further addressed Decapolis' blanket objections and found no basis for Decapolis' reductions. The court explained how Epic was "forced to pursue discovery given the tight timeline contained within the scheduling order" and that it "found no reason to quarrel with [Epic's] staffing decision." (*Id.*). Thus, the court held "the fees to be reasonable in light of the time records and the complexity of patent litigation." (*Id.*). The court nevertheless reduced the appeal fee award by an additional 10%—totaling $229,176.15. (*Id.*). The court issued its judgment on the attorneys' fees the same day. (Appx0020).

Decapolis filed its Notice of Appeal on December 11, 2024. (Appx0021).

---

[12] Epic has not, to date, sought to collect its fees incurred in connection with the various filings for Epic's Motion for Attorneys' Fees. (Appx2222; Appx2364, ¶ 5).

## SUMMARY OF THE ARGUMENT

The district court correctly applied the law of §285 and *Octane Fitness* to find this case exceptional and award Epic its attorneys' fees. The court properly considered several factors in light of the totality of the circumstances, including the objective unreasonableness of Decapolis' litigation position, its vexatious litigation campaign against Epic and its customers, Decapolis' dilatory, if not fully spurious, conduct across its litigation campaign, and the need to deter future litigants from repeating similar wasteful conduct.

On objective unreasonableness, the district court correctly determined Decapolis' Patents were, on their face, the kind of abstract paper-to-computer activity routinely found ineligible by this Court's jurisprudence. Indeed, when it came time to defend the Patents on appeal, Decapolis repeatedly argued their inventive step was found in the fact that they provided real-time automation, a byproduct of conventional computing that this Court has long found ineligible.

In this second appeal, Decapolis makes several unsupported, scattershot arguments seeking to shift blame for its exceptional conduct. For example, Decapolis argues that §101 jurisprudence is "uncertain," and the PTAB has issued conflicting guidance. Decapolis has not, because it cannot, point to any "guidance" suggesting that simply storing health records on computer instead of paper is patent eligible subject matter. This Court has been entirely consistent that it is not.

Moreover, Decapolis had actual notice from the PTAB that the subject matter was not eligible, prior to engaging in its litigation campaign. Mr. Joao, Decapolis' sole member, had previously attempted and failed to patent the same subject matter. The PTAB rejected those claims under §101, citing similar precedent from this Court. Decapolis blames Epic for not raising those decisions in its declaratory judgment complaint or at the case management conference, but cites no authority for its meritless argument. As for its contention that Epic was "sneaking it into the case," one wonders how Decapolis did not know of Joao's own PTAB proceedings.

Decapolis argues that the district court abused its discretion in relying on the *Joao II* PTAB decision because the patent application at issue did not involve "real-time access." Not only is that argument unsupported, it is legally baseless because such functionality, as this Court has repeatedly held – and admonished counsel during oral argument – is abstract. That is also an argument that Decapolis did not make to the district court.

Decapolis argues that the district court erred in holding the Asserted Patents were invalid and in not allowing Decapolis to amend its counterclaims – both decisions already affirmed by this Court. Decapolis' other arguments, such as having alleged good faith infringement contentions, even if true, are equally unavailing. Any adequate pre-suit investigation necessarily includes validity. And no infringement contentions can excuse Decapolis' litigation misconduct.

Decapolis' sole explanation for its vexatious litigation conduct is to blame Epic. The district court reviewed the record evidence and correctly concluded that Decapolis had no grounds for complaint. Yes, Epic took discovery on its defenses, including defenses other than §101, as the Federal Rules plainly allow. Patent litigation is expensive—and it often costs a lot more to defend oneself against even a clearly invalid patent than to pay out a settlement. In fact, that was Decapolis' entire business model. Decapolis did not expect Epic to stand up to Decapolis and spend more time and money to do what was right instead of what was cheaper and convenient—settle out like the other defendants. Decapolis does not get to complain about that now.

Finally, Decapolis' second issue on appeal (the calculation of fees awarded), is equally meritless. Decapolis fails to discuss a single legal precedent in support of the second appellate issue. Decapolis fails to address any of the record evidence that Epic introduced to the district court, including but not limited to expert testimony, industry data, and Epic's actual records, which support the fee award. Nor does Decapolis cite any record evidence of its own. Lacking any abuse of discretion, the Court should affirm.

## **ARGUMENT**

## I.    **THE DISTRICT COURT'S DECISION TO AWARD FEES UNDER 35 U.S.C. §285 IS ENTITLED TO SUBSTANTIAL DEFERENCE**

This Court reviews a district court's decision to award fees under §285 for abuse of discretion. *Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 572 U.S. 559, 563 (2014). "To meet the abuse-of-discretion standard, the moving party must show that the district court has made 'a clear error of judgment in weighing relevant factors or in basing its decision on an error of law or on clearly erroneous factual findings.'" *In re PersonalWeb Techs. LLC*, 85 F.4th 1148, 1153 (Fed. Cir. 2023) (quoting *In re Rembrandt Techs. LP Pat. Litig.*, 899 F.3d 1254, 1266 (Fed. Cir. 2018)). The district court "lives with the case over a prolonged period of time [. . .] is better positioned to decide whether a case is exceptional," *Highmark*, 572 U.S. at 564, and "with its first-hand knowledge of the parties and their positions, should not be unduly second-guessed." *Taurus IP, LLC v. DaimlerChrysler Corp.*, 726 F.3d 1306, 1327 (Fed. Cir. 2013). This Court therefore gives "great deference to the district court's exercise of discretion in awarding fees." *Energy Heating, LLC v. Heat On-The-Fly, LLC*, 889 F.3d 1291, 1307 (Fed. Cir. 2018). The abuse of discretion standard applies to all aspects of the attorney fee determination. *Highmark*, 572 U.S. at 564.

## II.    **THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION BY FINDING THIS CASE EXCEPTIONAL**

After considering the totality of the circumstances, the district court acted well within its discretion in finding this case exceptional. An exceptional case is "simply

one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. Icon Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). Factors the district court may consider include "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* at 554 n.6 (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994)). "There is no precise rule or formula for making these determinations." *Id.* Rather, the district court must simply exercise its discretion considering these factors. *Id.* Not all of these factors apply in all cases. Rather a case presenting either subjective bad faith or notably meritless claims may sufficiently set itself apart from normal cases to warrant a fee award. *Id.* at 555.

Here, contrary to Decapolis' assertion, the district court did not abuse its discretion. The district court closely supervised the litigation over the course of nearly three years. Drawing on that experience, plus its 27 years serving on the bench, the court found the case exceptional for two independent reasons, each sufficient to support a finding of exceptionality: (i) the objective unreasonableness of Decapolis' litigation position, and (ii) Decapolis' vexatious litigation campaign against Epic and its customers, including Decapolis' dilatory, if not fully spurious,

conduct across its litigation campaign, for the purpose of forcing settlements. The court concluded an award of attorneys' fees would deter such conduct in the future. (Appx0009-0015). The court acted well within its discretion and its findings are firmly grounded in the law and evidence.

## A. The District Court Properly Concluded This Case Was Exceptional Based In Part On the Weakness of Decapolis' Patent Claims Under 35 U.S.C. §101

A case is exceptional where the patentee had no viable claim, i.e., the "suit never should have been filed." *Rothschild Connected Devices Innovations, LLC v. Guardian Prot. Servs., Inc.*, 858 F.3d 1383, 1391 (Fed. Cir. 2017) (Mayer, J., concurring); *see also Inventor Holdings, LLC v. Bed Bath & Beyond, Inc.*, 876 F.3d 1372, 1377–78 (Fed. Cir. 2017) ("We conclude that the district court acted within the scope of its discretion in finding this case to be exceptional based on the weakness of IH's §101 arguments and the need to deter similarly weak arguments in the future."). Here, the district court found Decapolis' decision to continuously propound meritless arguments against Epic and its customers, despite Decapolis' substantively weak position and arguments, was exceptional and supports an award under §285 on its own. (Appx0012; Appx0015). As the district court held, Decapolis' position that "the abstract notion of electronically systemizing patient records was a patentable subject matter" had no support in the case law. (Appx0010). Indeed, "there was no language to support [Decapolis'] assertion that its claims were

directed to 'technological improvements,' which could have possibly transformed its abstract processing of claims into something patentable." (*Id.*). Decapolis knew, or should have known, its claims were baseless in light of this Court's established precedent, and the PTAB's refusal to issue nearly-identical claims to Mr. Joao. (Appx0010-0012); *see also Bed Bath & Beyond*, 876 F.3d at 1377–78.

On appeal, Decapolis makes a number of haphazard, disorganized, and unsupported arguments as to why it did not know its validity arguments were weak: (i) the §101 law is "uncertain"; (ii) the district court was outright wrong in holding the Patents were invalid (despite this Court affirming it on appeal); (iii) the district court also erred in denying amendment of the counterclaims (also affirmed on appeal); (iv) it was improper for the court to have considered the fact that the PTAB had rejected nearly verbatim claims on another Joao patent application; (v) conversely, Joao had obtained a notice of allowance of a different patent application in 2022 (with no showing of claim overlap); and (vi) Decapolis had a good faith "presuit investigation" of *infringement*. (Br. at 13, 17-18, 21-30). None of these arguments hold water, much less establish an abuse of discretion.

### 1.    *This Court's §101 jurisprudence is not "uncertain"*

Decapolis is incorrect to suggest that it could not have known the Asserted Patents were invalid because §101 law is "evolving" and "uncertain", citing two USPTO memoranda. (Br. at 24). Decapolis made this same argument to the district

court, which it considered but rightly rejected, including because Decapolis failed to articulate how the changes in the USPTO guidance could have impacted the analysis of the Asserted Patents. (Appx0011-0012). Decapolis makes the same argument to this Court, and again fails to provide a rationale.

This Court previously rejected the same "evolving 101 jurisprudence" argument in *Bed Bath & Beyond*. In *Bed Bath & Beyond*, the district court determined the case was exceptional based on the weakness of the patentee's arguments under §101 following *Alice*. 876 F.3d at 1377–78. The Court rejected the patentee's argument, in 2017, that it was hard to analyze patent eligibility under §101 because, while there was uncertainty under the Supreme Court's *Mayo* framework, "there is no uncertainty or difficulty in applying the principles set out in *Alice* to reach the conclusion that the '582 patent's claims are ineligible." *Id.* at 1379. The Court should rule the same way here.

As the district court held below, and this Court learned during the first appeal, the Asserted Patents are not at the margins. They claim nothing more than improved, allegedly more accurate and "real-time," recordkeeping by use of conventional computing. This Court has been uniformly clear that this has been ineligible subject matter since *Alice*. (*See* Appx2155-2156 at 4:9-5:3; Appx2158-2159 at 7:7-8:6; Appx3393-3395).

### 2. *This Court already affirmed the district court's §101 ruling*

Decapolis' attempts to relitigate the district court's findings on §101, which were affirmed by this Court, are improper and should be summarily rejected. *See Soverain Software LLC v. Victoria's Secret Direct Brand Mgmt., LLC*, 778 F.3d 1311, 1314 (Fed. Cir. 2015) (appellant's arguments precluded by the Court's prior decision that the patents-at-issue were invalid); *Int'l Rectifier Corp. v. IXYS Corp.*, 515 F.3d 1353, 1360 (Fed. Cir. 2008) ("[O]nce a case has been decided on appeal, the rule adopted is to be applied, right or wrong, absent exceptional circumstances, in the disposition of the lawsuit."). Decapolis re-argues why the Asserted Patents are not invalid under §101 and states the district court failed to conduct a proper *Alice* step-one or step-two analysis. (Br. at 26-30). Decapolis uses its purported belief as to the failings of the district court—and by implication that of this Court—to conclude Decapolis could not have reasonably known the Patents would be found invalid under §101. (Br. at 26-28).

Demonstrating why attorneys' fees are a necessary deterrent for future conduct, Decapolis provides the same meritless arguments it provided to this Court during the prior appeal. Decapolis again posits "the claims are appropriately characterized as identifying a 'specific' improvement in computer capabilities or network functionality" because they use computers to digitize and/or automate health records. (Br. at 27). Just as it did in oral argument, Decapolis attempts to

distinguish its abstract concepts by claiming they provide "real-time access" to records or transmit data "concurrently" with visits. (Br. at 28). As the parties briefed in the original appeal, this Court has consistently held that such real time communication is not sufficient to provide unconventionality; rather it is the inherent benefit of conventional computing.[13] This Court reminded Decapolis of that jurisprudence during oral argument. (Appx2157-2160 at 6:12-9:2). Decapolis further doubles-down on its criticisms of the district court, and thus this Court, by claiming the district court should have concluded the Patents' claims were valid in light of the case law Decapolis already cited during the prior appeal. (Br. at 28-29). Epic addressed these decisions in its prior appellate briefing (23-1302, Dkt. 15 at 33-34) and argument, and the Panel addressed the issue with Decapolis. (23-1302, Dkt. 41; Appx2160-2161 at 8:7-9:2, 9:20-10:2).

### 3. This Court already affirmed the district court's denial of leave to amend the counterclaims to add the Arrigo Report

Decapolis attempts to re-litigate the district court's refusal to permit Decapolis to amend its counterclaims to add an irrelevant expert report from a different case months after the deadline to amend. (Br. at 30-31). Yet, this Court previously

---

[13] *See, e.g., Elec. Power Grp., LLC v. Alstrom S.A.*, 830 F.3d 1350, 1355 (Fed. Cir. 2016); *Credit Acceptance Corp. v. Westlake Servs.*, 859 F.3d 1044, 1055 (Fed. Cir. 2017); *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 767-768 (Fed. Cir. 2019); *Trinity Info Media, LLC v. Covalent, Inc.* 72 F.4th 1355, 1365-66 (Fed. Cir. 2023).

34

affirmed the district court's denial of Decapolis' motion. (23-1302, Dkt. 12 at 3, 28-30; 23-1302, Dkt. 41). Moreover, Decapolis did not even appeal its failed motion for leave to file a surreply to add the report on the Rule 12 motion, and thus it is waived. *See Phil-Insul Corp. v. Airlite Plastics Co.*, 854 F.3d 1344, 1357 (Fed. Cir. 2017). Regardless, Decapolis provides *no explanation* of how the report, drafted over a year after Decapolis began its litigation campaign and in a different litigation, provided a good faith basis for Decapolis to think the case against Epic had merit. (Br. at 13, 30). Finally, in its order invalidating the Asserted Patents, the district court reviewed the Arrigo Report and held it did not change its invalidity analysis. (Appx3389; 23-1302, Dkt. 15 at 57-61).

### 4.    *The Joao and Salwan decisions are indisputably relevant*

Decapolis knew prior to starting its litigation campaign that its Patents would not survive a §101 challenge because the PTAB rejected, pursuant to §101, two continuations-in-part of the Asserted Patents that claimed the same subject matter. (Appx3403-3404). The district court focused on *Joao II*, and held, as unrebutted claim charts demonstrated,[14] the Application-at-issue was largely identical to the

---

[14] Epic submitted undisputed claim charts that compared (i) a representative claim in *Joao I* to claim 2 of the '048 Patent (Appx2582) and (ii) a representative claim in *Joao II* to claim 1 of the '040 Patent (Appx2579-2580). The claim charts illustrated the direct overlap in language between *Joao I* and *Joao II* and the Asserted Patents. (Appx2552-2553; Appx2558).

Asserted '040 Patent. (Appx3392-3393). In rejecting the *Joao II* claims under §101, the PTAB held "[t]he claims presented here are similar in that regard to those found by the Board, and affirmed by the Federal Circuit, to be directed to the 'abstract idea of billing insurance companies and organizing patient health information.'" *Joao II*, 2017 WL 2303383 at *4 (*citing In re Salwan*, 681 F. App'x at 941).

Decapolis suggests, without expressly arguing, that the court should not have relied on Decapolis' actual notice from the PTAB because the PTAB is not an Article III court. (Br. at 17). Decapolis offers no authority for its position, and thus it should be disregarded. Moreover, the *Joao* decisions faithfully applied this Court's jurisprudence and provided Mr. Joao with actual notice of the *In re Salwan* authority of this Court, which concerned very similar subject matter.

Decapolis' reliance on *Realtime Adaptive Streaming LLC v. Sling TV, LLC* to argue the district court improperly considered the two *Joao* decisions is misplaced. (Br. at 17-18); 113 F.4th 1348 (Fed. Cir. 2024). In *Realtime*, this Court reviewed the District of Colorado's award of attorneys' fees under §285. *Id.* at 1354. In particular, the *Realtime* Court reviewed certain "red flags" the district court held should have caused the patentee to reconsider its patent eligibility position. 113 F.4th at 1354-55. The *Realtime* Court held some of these flags were given proper weight for the exceptional case finding, while others should not have been given any weight. *Id.* at

1354-59. However, contrary to Decapolis' assertion, this Court's analysis in *Realtime* confirms the district court did not abuse its discretion here.

The *Realtime* Court held two prior §101 decisions were properly considered by the District of Colorado, and were a significant red flag to the patentee, because the District of Colorado found the representative claims were "essentially the same in substance." *Id.* at 1354-55. The *Realtime* Court further held these two decisions were significant red flags because the patentee made the same arguments against their reliance on the prior §101 appeal—which did not stop the Court from affirming the §101 order. *Id.* at 1355. By contrast, the *Realtime* Court held a third decision should not have been treated as a red flag because it, unlike the other two, "was about a different technology entirely" and there was no side-by-side comparison of the claim limitations. *Id.* at 1356.

Any further reliance on *Realtime* by Decapolis is misplaced because the remaining facts the *Realtime* Court held should not have been red flags are not present here. *See id.* at 1356-59. To the contrary, as shown below (*see infra* Sec. II.B.), the district court properly considered several additional facts regarding Decapolis vexatious and dilatory conduct that supports finding the case exceptional.

Here, like the two red flag decisions in *Realtime*, the two *Joao* decisions and this Court's decision in *In re Salwan*, involved claims nearly identical to those asserted by Decapolis and were on identical technology. (Appx0011-0012;

Appx3392-3393; Appx2158-2159 at 7:7-8:6). Indeed, Judge Chen observed during

oral argument that *In re Salwan* is "really, really close to this case." (Appx2158-

2159 at 7:7-8:6). Epic also included undisputed claim charts comparing the

limitations in representative claims of the patents from the two *Joao* decisions to the

Asserted Patents. (Appx2579-2580; Appx2582). Like the patentee in *Realtime*,

Decapolis also argued against the district court's reliance on the *Joao* and *Salwan*

decisions when this case was previously on appeal. (23-1302, Dkt. 15 at 16-17).

However, unlike in *Realtime*, the two PTAB decisions here involved the same

inventor as the Asserted Patents—Raymond Joao. (Appx0011). Thus, given this

Court's holding in *Realtime*, the district court properly considered the two *Joao*

decisions and the *Salwan* decision in the totality of circumstances to conclude

Decapolis' position on the merits was weak. (Appx0010-0012).[15]

 For the first time, while on appeal, Decapolis argues that the district court's

reliance on *Joao II* was "misplaced" because the *Joao II* claims were merely directed

to "processing a record for payment" and allegedly lacked "real-time access" to

updated health records and transmission of health data "concurrently" with the

health evaluation. (Br. at 28). This is the exact type of argument that demonstrates

---

[15] Contrary to *Joao I*, *Joao II*, and *Salwan*, the decisions that Decapolis claims the district court should have used in comparison instead, *TecSec*, *SRI*, *Data Engine*, *and Finjan*, do not involve the same technology or very similar claims. (Br. at 28-29).

why this litigation is frivolous and worthy of sanctions. As a preliminary matter, this argument was waived: Decapolis waived it in the Rule 12 briefing when it did not respond to the claim charts, and in the §285 briefing when it once again did not attempt to argue a single claim limitation of the Asserted Patents was missing from the *Joao* Applications. *Soverain*, 778 F.3d at 1314; *Phil-Insul*, 854 F.3d at 1357. Now, in appealing the §285 order, Decapolis claims the district court somehow abused its discretion by failing to address the newly raised issue. Secondarily, this argument is undeveloped and factually baseless. Not all the Asserted Patent claims expressly require real time, and the *Joao* Applications disclose the same functionality as they use substantially the same terms as the Asserted Patents. (Appx2578-2582).[16]

Finally, this argument is legally baseless – and Decapolis knows it. As this Court has repeatedly held, real time functionality is not an inventive concept that renders a claim patent eligible. Epic cited several authorities in this case so holding. (23-1302, Dkt. 15 at 31-32, 46-47). In fact, during oral argument, both Judge Chen and Judge Prost admonished Decapolis on this very point. (Appx2155 at 4:9-5:3, 6:14-9:2; *id.* at 9:20-10:2 ("Did you just say that the real-time transmission, which

---

[16] The '040 Patent does not expressly claim real-time in the claims. The same terms that Decapolis has used to argue that it results in real-time functionality are found in the '294 Application at issue in *Joao II*. (*Compare* 23-1302, Dkt. 12 at 17, 28, *with* Appx2579-2580).

is an abstract idea, is also the technological improvement?")). Decapolis keeps pushing forward baseless arguments, which forces Epic to incur costly briefing. Decapolis still has yet to be deterred from its vexatious conduct. Indeed, Decapolis' sole member, Mr. Joao, is not new to §101 jurisprudence, nor its misapplication. (Appx3418 (citing *Joao Bock Transaction Sys., LLC v. Jack Henry & Assocs., Inc.*, No. CV 12-1138, 2016 WL 1267159, at *3 (D. Del. Mar. 31, 2016), *aff'd*, 714 F. App'x 1019 (Fed. Cir. Mar. 13, 2018) (following §101 abstract idea holding, awarding $1,000,000 in §285 fees against Mr. Joao's entity based, *inter alia*, on litigation conduct)). This Court should put an end to the misconduct.

### 5.   *Decapolis' unrelated patent application is irrelevant*

Decapolis incorrectly claims the district court abused its discretion by not considering the allowance of an unrelated patent application. (Br. at 25). Decapolis argues the PTO's February 17, 2022 allowance created a good faith basis in 2021 to overlook the PTAB's and the Federal Circuit's decisions and embark on a 30-lawsuit spree. (Appx0174-0175; Appx4017). As Epic detailed before, this is a red herring. (Appx4017-4018).

Patent applications, by their very nature, are required to pertain to, describe, and claim wholly distinct inventions. *See* 35 U.S.C. § 121; 37 C.F.R. § 1.141; *Comair Rotron, Inc. v. Nippon Densan Corp.*, 49 F.3d 1535, 1539 (Fed. Cir. 1995) ("[S]eparate patents describe separate and distinct inventions."). Thus, for the 2022

application to have any potential relevance to the Asserted Patents, Decapolis had to demonstrate that it had the same claims or subject matter such that the Asserted Patents could overcome a §101 challenge. Decapolis *failed* to do so. (Appx4017). This fact was expressly presented to the district court. (*Id.*; Appx0174-0175). In sharp contrast to the analysis that Epic provided the district court, comparing the Patents to *Joao I* and *Joao II*, Decapolis made no showing of overlap or any other evidentiary showing to the district court.

Regardless, while the district court plainly considered all arguments by Decapolis, the court was justified in not expressly rebuking Decapolis' flawed argument. A district court is "not required to address every argument raised by a party or explain every possible reason supporting its conclusion." *See Novartis AG v. Torrent Pharms. Ltd.*, 853 F.3d 1316, 1328 (Fed. Cir. 2017) ("[T]his court has said on multiple occasions that failure to explicitly discuss every issue or every piece of evidence does not alone establish that the tribunal did not consider it.").

### 6. *Decapolis' arguments regarding a purported pre-suit investigation are irrelevant to invalidity and belied by the record*

Decapolis' assertion that it conducted a good faith pre-suit investigation was addressed and rejected by the district court. Decapolis' alleged pre-suit investigation is entirely based on *infringement*, which is irrelevant to whether the Patents were

facially invalid. (Br. at 16). Moreover, Decapolis' assertion is unsupported by the record.

Decapolis fails to properly address that any pre-suit investigation should have considered, at minimum, potential validity issues with the Asserted Patents. *WPEM, LLC v. SOTI Inc.*, No. 2:18-CV-00156-JRG, 2020 WL 555545, at *3-4, 6 (E.D. Tex. Feb. 4, 2020), *aff'd*, 837 F. App'x 773 (Fed. Cir. 2020) (awarding §285 attorneys' fees because, *inter alia*, "Court finds that WPEM conducted *absolutely no* pre-filing investigation into the validity or enforceability of the Asserted Patent."). Decapolis' claims are unsupported by the record.

Decapolis claims that because it only asserted two claims from the '040 Patent and 19 claims from the '048 Patent, its allegations were properly investigated and narrowly tailored. (Br. at 16). To the contrary, Decapolis asserted the same exact claims against the non-Epic defendants in its litigation campaign and did not selectively apply claims based on the particular defendant's alleged instrumentality. (Appx4012; Appx4021, ¶ 7); *compare* (Appx2483, ¶ 34), (Appx2489, ¶ 56), and *UT Southwestern*, Dkt. 25, ¶¶ 38, 58 (Aug. 01, 2022), *with, e.g., Decapolis Sys., LLC v. eClinicalWorks*, No. 4:22-cv-40020, Dkt. 1, ¶¶ 36, 56 (D. Mass. May 14, 2021) & *Decapolis Sys., LLC v. Med. Software Sols., Inc.*, No. 6:21-cv-00607, Dkt. 1, ¶¶ 36, 56 (W.D. Tex. June 11, 2021).

Moreover, Decapolis' infringement contentions were grossly overbroad, targeting nearly all of Epic's software products—from recruiting study participants and predictive analysis to combining data from hundreds of millions of patients—as "Accused Instrumentalities." (Appx4013; Appx2759-2760). Thus, for patents ostensibly directed to patient messaging and insurance claim generation, Decapolis' sweeping contentions belie its alleged good faith. (Appx2759-2761). Contrary to Decapolis' bald suggestion that Epic did not challenge Decapolis' infringement contentions (Br. at 16), Epic did challenge Decapolis' *pro forma* preliminary infringement contentions because they did not disclose the basis for Decapolis' infringement claims. (Appx2759-2761; Appx0014).

The district court was also presented with the fact that Decapolis' self-lauded detailed pre-suit investigation process resulted in Decapolis (a) suing Epic in a venue that was plainly improper under *TC Heartland*, (b) naming the wrong entity when Decapolis sued Epic's customers, and (c) asserting Epic's customer CHRISTUS Health had its own software, despite Decapolis' cited evidence explicitly stating the software was CHRISTUS Health's branded deployment of Epic's software and the URL linking to Epic's website. (Appx4014).

**B.    The District Court Did Not Abuse its Discretion by Finding Decapolis Engaged in Vexatious Litigation Against Epic and Epic's Customers**

The district court's decision that Decapolis acted unreasonably regarding its conduct with Epic and Epic's customers is well supported by the law and facts. Litigation misconduct alone can suffice to make a case exceptional. *Brasseler, U.S.A. I, L.P. v. Stryker Sales Corp.*, 267 F.3d 1370, 1380 (Fed. Cir. 2001); *Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.*, No. 08-04567, 2012 WL 161212, at *1 (N.D. Cal. Jan. 17, 2012), *aff'd*, 726 F.3d 1359 (Fed. Cir. 2013) ("[B]ased on [patentee's] vexatious litigation strategy, litigation misconduct and unprofessional behavior, [accused infringers] are entitled to reasonable attorneys' fees.").

Here, in addition to Decapolis' irrational nuisance settlement demands covered below (*see infra* Sec. II.B.4.), the district court properly relied on at least eight instances of conduct against Epic and Epic's customers that, when considered in the totality of the circumstances, supported finding this case exceptional. Moreover, Decapolis incorrectly claims the district court relied on conjecture and that Epic's conduct is relevant or should have altered the district court's analysis.

### 1.    *The district court properly relied on at least eight instances of vexatious conduct by Decapolis*

The district court properly considered the following eight factors and concluded, based on the totality of the circumstances, that Decapolis' conduct supported finding the case exceptional. *First*, the district court properly considered

Decapolis' decision to sue Epic in the W.D. of Texas without any reasonable grounds for patent venue. (Appx0009). Despite the uncontroverted evidence that Epic is incorporated in Wisconsin and maintains its sole principal place of business there, Decapolis refused to dismiss the action and instead forced Epic to engage in extensive discovery and file a motion to dismiss for improper venue. (Appx0009).[17] Decapolis attempted to moot Epic's Motion, and delay the litigation, by filing a first amended complaint without leave. (Appx3405 (citing *Decapolis*, No. 6:21-cv-00434-ADA, Dkt. 23)). Decapolis did not voluntarily dismiss its lawsuit until after the district court struck Decapolis' amended complaint and forced it to respond to Epic's Motion. (*Id.* (citing *id.*, Dkt. 24)). Decapolis did not respond to Epic's motion; it had no grounds. But instead of suing Epic in Wisconsin, it started suing Epic's customers. (Appx0009).

*Second*, after an unsuccessful attempt to leverage a settlement, Decapolis sued Epic customers Central Texas Community Health Centers and University Health System Services of Texas, Inc., in the W.D. of Texas based on alleged use of Epic's software. (Appx3412). Contrary to Decapolis' attempts to paint itself as the victim (Br. at 12-13), Epic was forced to file a declaratory judgment action and seek a

---

[17] Decapolis' lead appellate counsel was recently publicly admonished by the Eastern District of Texas for similar conduct. *See Symbology Innovations, LLC v. Valve Corporation et. al.*, No. 2:23-cv-00419-JRG, Dkt. 110 (E.D. Tex. Jan. 31, 2025) (repeated legal contentions in the face of clear law to the contrary can itself be sanctionable).

determination that the Asserted Patents were invalid. (Appx0009); *see Lumen View Tech. LLC v. Findthebest.com, Inc.*, 811 F.3d 479, 481-82 (Fed. Cir. 2016) (following invalidity dismissal under §101, affirming holding case was exceptional because, *inter alia*, the claims facially lacked merit, patentee employed predatory strategy and settlement demands, and patentee engaged in vexatious conduct against other defendants).

*Third*, undeterred by the above, and contrary to Decapolis' assertions on appeal that it accepted litigating the Patents in its hometown, Decapolis filed an additional lawsuit against Epic's customer CHRISTUS Health, and the improper party "UT Southwestern Health Systems," in the Eastern District of Texas. (Appx3408; Appx3415-3416).

*Fourth*, Decapolis engaged in a series of predatory tactics and gamesmanship to increase the cost and exert undue pressure on Epic to settle rather than litigate. For example, contrary to Decapolis' assertion (*see* Br. at 16), Epic did challenge Decapolis' *pro forma* preliminary infringement contentions because they did not remotely disclose the basis for Decapolis' infringement claims. (Appx2759-2761; Appx0014). Decapolis also refused to meaningfully respond to Epic's interrogatories or provide even minimally responsive discovery. (Appx2762-2766). As a result, Epic was forced to file a motion to compel. (Appx2756; Appx0014); *see Blackbird Tech LLC v. Health In Motion LLC*, 944 F.3d 910, 916-17 (Fed. Cir. 2019)

46

(patentee's unreasonable delay in producing documents, withholding documents, and otherwise failing to produce other responsive documents supported exceptional case finding); *Lumen View*, 811 F.3d at 482-83.

*Fifth*, Decapolis initially refused to stay discovery pending Epic's motion for judgment on the pleadings and only agreed to the stay a week after Epic requested such relief and was forced to file an opposed motion. (Appx2735). Decapolis ultimately acknowledged that Eleventh Circuit precedent favors a stay pending the outcome of a dispositive motion. (Appx0014, fn.6).

*Sixth*, despite the district court's stay order, and its decision invalidating the Asserted Patents, Decapolis continued to target Epic's customers and used the customer lawsuit to serve a subpoena on Epic seeking the same highly sensitive source code, technical documents, and financial information it requested in the Florida court action. (Appx0014-0015). Like before, Decapolis theorizes its suits against Epic's customers and aggressive discovery demands in the face of a stay demand were necessary to pursue direct infringement claims against Epic's customers. (Br. at 4-5, 18-20; Appx0159-0161). Decapolis also theorized the discovery was necessary because Epic correctly stated it was "not a healthcare provider" and did not have access to the specific documents requested. (Appx0170). The court properly dismissed these arguments as both false and contrary to the timeline of events. (Appx0014). For example, "[Decapolis] sued at least two of

[Epic's] customers before commencing this action, and it sued another customer only one day after receiving [Epic's] discovery responses in this matter." (*Id.*).

*Seventh*, Decapolis refused to dismiss the lawsuit against CHRISTUS after the district court issued its final judgment invalidating the Patents, despite the clear collateral estoppel jurisprudence. (Appx3408; Appx0015 (citing *Motorola Mobility*, 52 F.4th at 1347–48 (holding collateral estoppel applies based on a district court decision that is still pending on appeal))). CHRISTUS filed a motion to dismiss based on the collateral estoppel effect of the Florida district court's invalidity order. (Appx3408 (citing *UT Southwestern*, No. 2:22-cv-00159, Dkt. 50 (E.D. Tex. Dec. 29, 2022)). Decapolis opposed this motion and instead filed a motion to stay, forcing more briefing. (*Id.* (citing *id.*, Dkts. 56, 61, 65)).

*Eighth*, Decapolis did not dispute Epic's allegations regarding Decapolis' own litigiousness, Decapolis' use of form complaints, and the high rates of settlements. (Appx0013).

Based on the above, the district court was well-within its discretion to find the case exceptional. *See Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1320 (Fed. Cir. 2011) (affirming finding of exceptional case against NPE that, *inter alia*, filed nearly 100 lawsuits for nuisance value settlements and employed offensive tactics); *In re PersonalWeb Techs. LLC*, 85 F.4th at 1153 (affirming attorneys' fees award, holding district court properly considered patentee's unreasonable litigation conduct

48

against customers, attempts to delay litigation for leverage, and frequently changing its positions to "overcome the hurdle of the day.").

### 2.    *Decapolis' "conjecture" argument is disingenuous*

Decapolis erroneously argues that the district court relied on "pure conjecture" in its §285 analysis. (Br. at 14-15). Decapolis does not dispute the truth of any of the assertions, but rather seeks to capitalize on the court's use of the term "appear" (or a variant of same). (*See id*.). This is disingenuous at best. The four statements that Decapolis cites to as "conjecture" are well-supported in the record.

Decapolis takes issue with the district court's conclusion that Decapolis is a serial litigant. (*Id.* at 14). However, the uncontested record is that Decapolis filed more than 30 lawsuits, naming at least 40 defendants, in less than two years alone. (Appx0008-0009; Appx0012); *see Eon-Net*, 653 F.3d at 1320; *Rothschild*, 858 F.3d at 1389-90 (filing 58 lawsuits for quick settlements constituted "vexatious litigation [that] warrants an affirmative exceptional case finding."). Collectively with its sister company, Greatgigz (which shares the same member and inventor, and legal counsel, and also targeted Epic), they filed more than 80 lawsuits in less than two years. (Appx0012 (citing Dkt. 88-6)). Epic submitted this evidence with its motion for attorneys' fees. (Appx3521-3528). As the court noted, Decapolis did not challenge this data or the conclusions that Epic drew from it (Appx0013); thus, it is waived. Indeed, Mr. Joao has had other non-practicing entities, including one

(JoaoBock) that has been sanctioned under §285 after asserting a patent that was invalidated under §101. (Appx3418 (citing *Joao Bock*, 2016 WL 1267159 (D. Del. Mar. 31, 2016)).

The remaining three statements cited by Decapolis as "conjecture" are similarly true, and not disputed with evidence. (Br. at 14-15). They each pertain to Decapolis' aforementioned conduct in suing Epic's customers and refusal to acknowledge the collateral estoppel effect of the district court's invalidity order— including Decapolis' attempts to push for discovery of Epic in the CHRISTUS matter to avoid the stay issued by the Florida court. (Br. at 14-15; Appx3587-3596).

Moreover, for each of the four statements Decapolis asserts is "conjecture," the district court provided an explanation with record citations, which Decapolis ignores. (Appx0014-0015).

### 3.    *Epic's conduct is not at issue, nor does it alter the abuse of discretion analysis*

Decapolis further tries to shift liability by focusing on Epic's purported conduct, which Decapolis claims the court failed to consider. (Br. at 8-10). However, the court considered Decapolis' arguments and found them lacking. (Appx0019). In particular, the district court noted the inconsistencies in Decapolis' arguments regarding discovery and that Epic responsibly pursued relevant discovery given the tight timeline set by the court's scheduling order. (Appx0019). And Epic is the only party that had to file a motion to compel. (Appx0014).

Moreover, Decapolis claims this case could not be exceptional because Epic waited until April 14, 2022 to add an invalidity claim against the '048 Patent. (Br. at 9-10). Decapolis alternatively suggests that Epic must have believed that the '048 Patent was valid and/or hid the fact that the Patent was invalid from Decapolis. (*Id.*). Similarly, Decapolis blames Epic for not disclosing to Decapolis earlier the "PTAB proceedings" that were the "silver bullet" to the litigation. (Br. at 21-23). Presumably, that uncited "silver bullet" was the PTAB proceedings against Mr. Joao himself – the proceedings when he was last told the precise subject matter is not eligible under §101 pursuant to this Court's §101 jurisprudence. Decapolis calling this sandbagging is beyond the pale.

Ultimately, Decapolis' unsupported inferences are irrelevant. The proper issue before the district court was whether Decapolis had a good faith basis to assert the Asserted Patents, whether the Patents were objectively invalid, and how Decapolis conducted itself in the litigation. As this Court held in *Blackbird Tech*, a district court's determination that the patentee lacked substantive strength in its litigation position is not an abuse of discretion where "the exercise of even a modicum of due diligence by [the patentee] as part of a pre-suit investigation would have revealed the weaknesses in its litigation position." 944 F.3d at 916. Like the patentee in *Blackbird*, Decapolis cannot blame others, including the district court, for ignoring the weaknesses in its own litigation position. *Id.*

Moreover, Decapolis' rank speculation about Epic's motivation is unsupported. (Br. at 9-10). To the extent it could ever be relevant, if Decapolis wanted discovery on Epic's beliefs as to the Asserted Patents, it should have conducted discovery and presented evidence to the district court.[18] Likewise, Decapolis cannot reasonably claim that, had Epic given Decapolis an additional one month notice of its intent to challenge the validity of the '048 Patent, Decapolis would have done anything differently. As the district court held, a decision this Court summarily affirmed, the '048 Patent and the '040 Patent each suffer from the same deficiencies under §101. (Appx3393-3395; Appx0010-0011). Epic's motion for judgment on the pleadings, filed on May 20, 2022, included both the '040 Patent and the '048 Patent. (Appx2543). Epic's March 24, 2022 discovery requests and May 11, 2022 preliminary invalidity contentions were likewise targeted at both Patents. Accordingly, with the exception of a few weeks, both Patents' invalidity was always at issue.

---

[18] As Decapolis knows, at the time of Epic's declaratory judgment complaint, an *inter partes* review petition was filed by a third party against the '040 Patent, but not the '048 Patent. *eClinicalWorks LLC, et al. v. Decapolis Sys. LLC*, IPR2022-00229 (P.T.A.B.); *see Innovative Therapies, Inc. v. Kinetic Concepts, Inc.*, 599 F.3d 1377, 1382 (Fed. Cir. 2010) (taking judicial notice of related litigation). 35 U.S.C. § 315 creates a statutory bar to file a petition for IPR to any party that has already commenced a declaratory judgment action of invalidity. Epic had the right to consider its options before commencing such an action on the '048 Patent.

Decapolis' argument that "Epic didn't need discovery" (Br. at 22) lacks any support in the law. Under the Rules of Civil Procedure, Epic had the right to discovery on all its defenses, not just §101.

Thus, Decapolis' argument that Epic "hid[] its Section 101 patentability silver bullet to invalidate" the Asserted Patents lacks merit. Decapolis was on notice from the PTAB that the same subject matter was not eligible for patenting under this Court's jurisprudence, as early 2017. (Appx2552-2553); *Joao I*, 2017 WL 2377811, at *3; *Joao II*, 2017 WL 2303383, at *4. And the fact Decapolis was on notice of Epic's intention to seek attorneys' fees and expenses as early as February 2, 2022 (Appx2465) undermines Decapolis' "attempt to blame others, including the district court, for it being purportedly unaware of the weaknesses in its litigation position." *Blackbird Tech*, 944 F.3d at 916.

### 4.    *Decapolis cannot account for its extortionist behavior*

The district court properly considered Decapolis' more than 30 lawsuits against Epic, Epic's customers, and numerous other parties wherein Decapolis used a form complaint to quickly extract nuisance value settlements. (Appx0012-0013). As this Court held in *SFA Systems, LLC v. Newegg Inc.*, "a pattern of litigation abuses characterized by the repeated filing of patent infringement actions for the sole purpose of forcing settlements, with no intention of testing the merits of one's claims, is relevant to a district court's exceptional case determination under §285."

793 F.3d 1344, 1350 (Fed. Cir. 2017). Likewise, this Court has routinely held it was proper for the district court to consider evidence that a litigant sends standardized demand letters to obtain "license fees" and force settlements as a factor weighing in favor of finding the matter to be an exceptional case. *See Elec. Commc'n Techs., LLC v. ShoppersChoice.com, LLC,* 963 F.3d 1371, 1377 (Fed. Cir. 2020); *Rothschild*, 858 F.3d at 1389-90 (engaging in 58 lawsuits for quick settlements "for significantly below the average cost of defending an infringement lawsuit" constituted "vexatious litigation [that] warrants an affirmative exceptional case finding.").

Relying on this Court's jurisprudence, the district court considered Decapolis' settlement offers to Epic that "drastically decreased over the course of a week before [Decapolis] completely pulled settlement off the table, and each were significantly less than the total cost of litigation." (Appx0012-0013 (citing *Blackbird Tech*, 944 F.3d at 916; *SFA Sys.*, 793 F.3d at 1350)). As the court noted, Decapolis failed to address, let alone refute, the facts surrounding Decapolis' litigiousness, Decapolis' use of form complaints, and Decapolis' high rates of settlements. (Appx0013).

Decapolis also did not explain or justify its erratic settlement demands.[19] (Appx0013). Decapolis does no better now on appeal, and thus it is waived.

---

[19] Decapolis' settlement demands also included the GreatGigz lawsuits. (Appx3407-3408; Appx3504, ¶ 5; Appx4000-4001).

*Advanced Magnetic Closures, Inc. v. Rome Fastener Corp.*, 607 F.3d 817, 833 (Fed. Cir. 2010) (affirming §285 award and refusing to consider arguments not raised in opening brief on appeal).

For the first time on appeal, Decapolis tries to excuse its multiple lawsuits against Epic and its customers by arguing that it was forced to file multiple lawsuits under the AIA and *TC Heartland*. (Br. at 11, fn.1). Decapolis states that it would have "preferred" to have litigated one action against Epic and its customers. (*Id.*). Aside from being waived, this excuse is belied by the record and ignores the customer suit exception, which expressly contemplates that a manufacturer of the accused instrumentality properly may litigate the patent claims on behalf of its customers. *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990). Decapolis had "one action" to litigate the liability of Epic's software, the software used by Epic's customers. It was the declaratory judgment Epic filed below in Decapolis' home venue.

Yet, Decapolis did not "embrace" it (*contra*, Br. at 6); rather, Decapolis filed another lawsuit against another Epic customer, as well as a company Decapolis incorrectly assumed was an Epic customer, in the E.D. of Texas. (Appx0014; Appx3408). Decapolis did not agree to stay any of the other customer suits pending the suit with Epic; it continued to litigate the suits in Texas while it pushed for its nuisance settlements. (Appx3405-3406; Appx3409-3410).

## III.   THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN ITS DETERMINATION OF THE AMOUNT OF ATTORNEYS' FEES

Decapolis challenges a total of $634,457.23 in attorneys' fees awarded to Epic, arguing Epic should have been awarded $50,000 total for both the district court litigation and the prior appeal. (Br. at 15). Decapolis fails to recite the proper standard the district court should have applied, nor engage with the standard of review this Court must apply. Decapolis likewise fails to discuss a single precedent for its contention that the district court erred in awarding $634,457.23, let alone that the award should have been capped at $50,000. Decapolis does not address the record evidence Epic submitted, which included both detailed fact and expert evidence, or that Decapolis did not rebut this evidence before the district court. For these reasons, Decapolis' appeal should be denied.

To the extent the Court engages on the merits, Decapolis' position is unreasonable and unsupported in the law. This Court has routinely held the "determination of reasonable attorney fees is… 'a matter that is committed to the sound discretion' of a district court judge." *Lumen View*, 811 F.3d at 483. A prevailing party is generally entitled to *all of its fees* reasonably expended on the litigation, *Mathis v. Spears*, 857 F.2d 749, 755–56 (Fed. Cir. 1988), and can include the time spent on appeal. *See Bed Bath & Beyond*, 876 F.3d at 1380; *Therasense, Inc. v. Becton, Dickinson & Co.*, 745 F.3d 513, 517 (Fed. Cir. 2014). "In determining the amount of reasonable attorneys' fees under federal fee-shifting statutes, the

Supreme Court has consistently upheld the lodestar calculation as the 'guiding light of [its] fee-shifting jurisprudence.'" *Bywaters v. United States*, 670 F.3d 1221, 1228-29 (Fed. Cir. 2012) (quoting *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010)).

This Court does not require a strict accounting of the fees requested. *In re Rembrandt*, 899 F.3d at 1279. Rather, "trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Fox v. Vice*, 563 U.S. 826, 838 (2011). "[T]rial courts need not, and indeed should not, become green-eyeshade accountants," *id*., and "a tedious, line-by-line investigation of the hours Appellees expended" is not required, *Rembrandt*, 899 F.3d at 1280.

Here, the district court properly concluded Epic was entitled the full amount of the attorneys' fees it requested in connection with the district court litigation, totaling $405,281.08. (Appx0018-0019).[20] The court also properly granted Epic its fees incurred on appeal, but exercised its discretion to reduce the fees by an additional 10%, resulting in $229,176.15. *See Bed Bath & Beyond*, 876 F.3d at 1380 ("We have previously held that §285 does not bar the trial court from awarding fees for the entire case, including any subsequent appeals." (quotation omitted)).

---

[20] While $405,281.08 is the full amount Epic requested, it represents only a portion of the amount Epic was billed in connection with the district court litigation—Epic removed more than 950 hours from the fees sought. (Appx2364, ¶ 5).

As with the district courts in both *Blackbird* and *Lumen View*, the district court here considered the record, including Epic's detailed break-down of the tasks performed by each lawyer, the billing rate of each lawyer, and the time spent by each lawyer working on this case. (Appx0019; Appx2212-2216); *see Blackbird Tech*, 944 F.3d at 918; *Lumen View*, 811 F.3d at 483 ("[A] district court usually applies the lodestar method, which provides a presumptively reasonable fee amount, by multiplying a reasonable hourly rate by the reasonable number of hours required to litigate a comparable case.").

As detailed above, Epic provided evidence with a detailed explanation of the timekeepers' experience and qualifications (Appx2212-2213; Appx3420-3421), the timekeepers' hourly rates and number of hours incurred both at the district court and on appeal (Appx2213-2215; Appx3421-3422), a description of the tasks performed by the timekeepers (Appx2215-2216; Appx3422), and a thorough explanation, using the lodestar method, supporting why the hourly rates and hours incurred were reasonable under the circumstances (Appx2217-2223). Epic supported its submission with expert testimony and industrywide data. (Appx2356-2362; Appx2380-2384). Decapolis did not depose Epic's expert or lay witnesses. (Appx2406-2407). Based on the Parties' arguments, and the declaration from Epic's attorney expert David Brafman, the district court (i) found no reason to quarrel with

Epic's staffing decision and (ii) found Epic's fees "to be reasonable in light of the time records and the complexity of patent litigation." (Appx0019).

Other than several off-hand, unsupported comments about Epic's alleged lack of entitlement to "over $600,000" or that the award is "extreme," and that "a smaller award of $50,000.00 would serve as an appropriate deterrence to Decapolis," Decapolis did not directly address its perceived shortcomings in the district court's award amount. (*See* Br. at 15, 22-23). Decapolis refers vaguely to its "financials" but neither cited to anything on appeal, nor to the district court. (Br. at 15). Decapolis does not refer to the prior §285 sanction of its member, how that award comports with the size of its requested $50,000 award, or the lack of deterrence the award imposed on his conduct. Nor does Decapolis challenge the actual time entries or rates charged by Epic's attorneys. (Appx2218); *see also* S.D. Fla. L.R. 7.3(a) ("If a party objects to an hourly rate, its counsel must submit an affidavit giving its firm's hourly rates for the matter and include any contingency, partial contingency, or other arrangements that could change the effective hourly rate."). Accordingly, any such challenges are waived. *See Phil-Insul*, 854 F.3d at 1357.

In reaching its decision on the amount to award, the district court reviewed Decapolis' various arguments and found "no basis for any of the reductions [Decapolis] proposes." (Appx0019).

In sum, the district court did not abuse its discretion in awarding Epic a total of $634,457.23 in attorneys' fees.

## CONCLUSION

The Court should affirm the district court's judgment.

Dated: March 26, 2025.                    Respectfully submitted,

　　　　　　　　　　　　　　　　　　 */s/ Matthew J. Duchemin*
　　　　　　　　　　　　　　　　　　 Kristin Graham Noel
　　　　　　　　　　　　　　　　　　 kristin.noel@quarles.com
　　　　　　　　　　　　　　　　　　 Matthew J. Duchemin
　　　　　　　　　　　　　　　　　　 matthew.duchemin@quarles.com
　　　　　　　　　　　　　　　　　　 Bryce A. Loken
　　　　　　　　　　　　　　　　　　 bryce.loken@quarles.com
　　　　　　　　　　　　　　　　　　 QUARLES & BRADY LLP
　　　　　　　　　　　　　　　　　　 33 East Main St., Suite 900
　　　　　　　　　　　　　　　　　　 Madison, Wisconsin 53703
　　　　　　　　　　　　　　　　　　 Tel. (608) 251-5000
　　　　　　　　　　　　　　　　　　 Fax (608) 251-9166

　　　　　　　　　　　　　　　　　　 *Counsel for Plaintiff-Appellee Epic*
　　　　　　　　　　　　　　　　　　 *Systems Corporation*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 2025-1289

**Short Case Caption:** Epic Systems Corporation v. Decapolis Systems, LLC

> **Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes 13,877 words.

☐ the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐ the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: 03/26/2025

Signature: /s/ Matthew J. Duchemin

Name: Matthew J. Duchemin